STATE OF NORTH CAROLINA v. JONAS FLOYD REAVES

No. 7015SC326

(Filed 26 August 1970)

1. **Robbery § 4— armed robbery prosecution — sufficiency of evidence — formation of intent to take patrol car**

    In an armed robbery prosecution wherein the evidence of the State tended to show that defendant drove away in a patrol car after he had murderously assaulted the patrolman with a pistol and left the patrolman seriously wounded in an embankment, there is no merit to the defendant's contention that the prosecution should be dismissed for reason that the intention to take the patrol car and the revolver arose in his mind only after the assault was completed and defendant had found his own car locked, where all of the evidence established one continuing transaction amounting to armed robbery, with the elements of violence and of taking so joined in time and circumstance as to be inseparable.

2. **Robbery § 5— armed robbery — instructions on lesser included offense**

    In an armed robbery prosecution, there is no necessity for the trial judge to instruct the jury as to an included crime of lesser degree where the State's evidence tends to show a completed robbery and there is no conflicting evidence relating to the elements of the crime charged.

3. **Criminal Law § 116— instruction on defendant's right not to testify — absence of request by defendant**

    The trial court in its discretion properly instructed the jury upon the right of defendant not to testify in his own behalf, even though defendant made no request for such an instruction; the fact that the trial court mistakenly prefaced the instruction with the statement that it was given at defendant's request, *held* not prejudicial.

APPEAL by defendant from *Copeland, J.,* 12 January 1970 Criminal Session of ORANGE Superior Court.

Defendant was charged in a bill of indictment with the felony of armed robbery. He pleaded not guilty. The jury returned a verdict of guilty as charged. Judgment was imposed sentencing defendant to prison for a term of thirty years, and defendant appealed.

*Attorney General Robert Morgan, Assistant Attorney General William W. Melvin and Staff Attorney T. Buie Costen for the State.*

*Winston, Coleman & Bernholz, by Steven A. Bernholz for defendant appellant.*

PARKER, J.

[1]  The charge of armed robbery against defendant, Jonas Floyd Reaves (Reaves), was consolidated for trial with a similar charge made in a separate bill of indictment against Chris Roland Elliott (Elliott). The charges against both defendants arose out of the same events. Each defendant was found guilty, was sentenced to prison, and each filed a separate appeal to this Court. Upon Elliott's appeal this Court found no error in the trial. (See *State v. Elliott*, 9 N.C. App. 1, 175 S.E. 2d 12. The facts shown by the State's evidence are set forth in the opinion in *State v. Elliott, supra*. Insofar as pertinent to the questions raised by this appeal, the facts shown by the State's evidence may be briefly summarized as follows (defendant Reaves offered no evidence at the trial) :

At 1:15 a.m. on 15 November 1969 a highway patrolman stopped a station wagon on Interstate 85 in Orange County. Reaves was the driver and Elliott was a passenger in the station wagon. The patrolman arrested Reaves for operating an automobile upon a highway while under the influence of an intoxicating liquor and placed Reaves in the passenger side of the front seat of the patrol car. Elliott got into the back seat of the patrol car. The patrolman then went to the station wagon, locked it, and took the keys. When the patrolman returned to the patrol car and started to use the radio, Reaves pointed a .25 automatic at him and told the patrolman he was going to kill him. Reaves held the automatic in his right hand and appeared to reach with his left hand for the patrolman's service revolver, which was in a holster worn on the patrolman's right side. As the patrolman lunged for Reaves' gun, the gun discharged, striking the patrolman in the stomach. At the same time the patrolman was struck on the top of the head by some instrument. As the patrolman and Reaves struggled for the automatic, Elliott, in the back seat, left the patrol car. The patrolman managed to take the automatic away from Reaves and found it had become jammed. Reaves then snatched the patrolman's service revolver and its holster free from the patrolman's belt. The patrolman knocked the revolver and holster from Reaves' hand to the floorboard of the patrol car. Reaves retrieved the pistol and holster from the floorboard, removed the pistol from the holster, and started swinging it toward the patrolman. The patrolman lunged for Reaves and again struck the pistol from his hand to the floorboard on the right side of the patrol car. The door to the driver's side of the patrol car was open, and the patrolman fell out onto

the pavement. The patrolman got up, saw Reaves scrambling in the right front of the car, and immediately went around the patrol car to the edge of the embankment at the side of the road, where he fell and rolled approximately 50 feet down the embankment. The patrolman then saw Reaves get out of the patrol car and search the embankment with the patrolman's flashlight. Reaves then moved from the rear of the patrol car and went to the driver's side of the station wagon, but could not get in because the patrolman had locked it and removed the keys. Reaves then returned to the patrol car and got in, and the patrolman observed the patrol car move approximately 300 feet west and stop. A voice called out, "Chris." The patrol car remained stopped ten or fifteen seconds, and then moved away out of sight on I-85. The patrol car was later found abandoned in Durham. The patrolman's service revolver was found nearby, off of Elba Street in Durham behind a big tree.

Appellant contends that the State's evidence, while sufficient to support a conviction for larceny or assault with a deadly weapon, or both, was not sufficient to support a conviction for armed robbery. This contention is based upon appellant's argument that the intent to take the patrol car and the patrolman's revolver arose in defendant's mind only after defendant found his own automobile locked, and therefore there was not the necessary coincidence in time between the use or threatened use of a deadly weapon and the felonious taking of personal property from the person of the patrolman so as to make the crime armed robbery. There is no merit in this contention.

The uncontradicted evidence clearly shows that at the very moment defendant drove away in the patrol car, taking the patrolman's revolver with him, the patrolman lay wounded at the bottom of the embankment, hiding from the armed defendant, and fearing for his life. The car and gun were not abandoned or left unattended when they were taken by the defendant; defendant had driven their custodian away by a vicious and murderous assault. Defendant's use of his automatic in shooting the patrolman and his threatened use of the patrolman's revolver in a further deadly assault upon the patrolman, clearly continued to be operative at the time he actually drove away the patrol car, taking the patrolman's revolver with him. The evidence shows one continuing transaction amounting to armed robbery, with the elements of violence and of taking so joined in time and circumstance as to be inseparable.

[2]   The fact that defendant may have taken the patrol car and the revolver for temporary use, and, after they had served his purpose for escape may have intended to abandon them at the first opportunity lest they lead to his detection, does not change the result. "When, in order to serve a temporary purpose of his own, one takes property (1) with the specific intent wholly and permanently to deprive the owner of it, or (2) under circumstances which render it unlikely that the owner will ever recover his property and which disclose the taker's total indifference to his rights, one takes it with the intent to steal *(animus furandi)*." *State v. Smith,* 268 N.C. 167, 150 S.E. 2d 194. In the present case all of the evidence for the State, which was uncontradicted by any evidence for defendant, if believed by the jury, shows that defendant committed the crime of armed robbery as charged in the indictment. There was no evidence to support a contention that defendant, if not guilty of the crime charged in the indictment, was guilty of a crime of less degree. There is no necessity for the trial judge to instruct the jury as to an included crime of lesser degree where, as in this case, the State's evidence tends to show a completed robbery and there is no conflicting evidence relating to elements of the crime charged. *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545. On the evidence in this case the trial court correctly submitted the case to the jury on the single issue of defendant's guilt or innocence of the crime of armed robbery as charged in the indictment.

[3]   Appellant also assigns as error that the court instructed the jury as to the right of defendant not to testify and as to how his failure to testify was to be considered. In this connection appellant admits the instruction was contextually correct, but appellant contends it was error for the court to charge at all on this aspect of the case absent a specific request from defendant's attorney to do so. "The trial judge in his discretion *may* give such an instruction, but, absent a proper request, is not *required* to do so." (Emphasis added.) *State v. Powell,* 6 N.C. App. 8, 169 S.E. 2d 210. The giving of the instruction in the present case was within the trial court's discretion, no abuse of which has been shown.

Defendant further complains that the court prefaced the instruction with the statement that it was given at the request of defendant, whereas no such request had been made. Even so, this did not amount to a prejudicial comment by the court upon defendant's failure to testify, particularly in view of the court's correct substantive instruction on the matter. *State v. McNeill,*

229 N.C. 377, 49 S.E. 2d 733, relied on by appellant, is clearly distinguishable.

We have carefully examined all of appellant's remaining assignments of error which have been brought forward in his brief, all of which relate to the court's charge to the jury, and find in them no merit. In the trial and judgment appealed from we find

No error.

CAMPBELL and VAUGHN, JJ., concur.