STATE OF NORTH CAROLINA v. RONNIE CLEMMONS

No. 7711SC674

(Filed 7 February 1978)

1. **Robbery § 4.4— armed robbery—identification of defendant as robber—sufficiency of evidence**

The State's evidence was sufficient for the jury on the issue of defendant's guilt of armed robbery of a grocery store where it tended to show that defendant and a companion borrowed a car from a friend at 6:00 p.m.; defendant had a pistol in his possession at that time; the grocery store was robbed at 6:30 by two persons; one robber had a shotgun and one had a pistol; defendant's companion was positively identified as one of the robbers; defendant and the companion were seen together in the borrowed car minutes before 6:30 at a service station a few miles from the grocery store, and they were again seen together in the car shortly after 6:30 at another service station a few miles from the grocery store; the unidentified robber wore black gloves and dropped one of them at the robbery scene; and a black glove was found in the borrowed car on the day following the robbery.

State v. Clemmons

**2. Robbery § 4.1 — taking from victim's "presence" — no fatal variance between indictment and proof**

There was no fatal variance between indictment and proof where the indictment alleged that money was taken "from the presence, person, place of business of Elizabeth Ann McCormick" and the evidence showed that both Mrs. McCormick and her husband were present in a store operated by Mrs. McCormick when the robbers entered and announced that it was a holdup, Mrs. McCormick walked from the store area to an adjoining room and was shot by one of the robbers, and Mr. McCormick gave the robbers money from the cash register, since there was a completed crime under G.S. 14-87 when Mrs. McCormick was intimidated by firearms for the purpose of obtaining money and before money was actually given to the robbers by Mr. McCormick.

**3. Robbery § 1.1 — taking from victim's presence**

A taking is from the "presence" of the victim within the purview of the armed robbery statute if the force or intimidation by the use of firearms for the purpose of taking personal property has been used and caused the victim in possession or control to flee the premises and this is followed by the taking of the property in a continuous course of conduct.

**4. Criminal Law § 101 — misconduct affecting jurors — remark of sheriff — conversation between juror and deputy — denial of mistrial**

The trial court in an armed robbery case did not err in the denial of defendant's motion for mistrial because of misconduct affecting the jury based on (1) the sheriff's remark to defense counsel when a juror was nearby that "I understand your boys are about to enter guilty pleas in this case," where the juror testified, and the court found, that he did not hear the sheriff's statement, and (2) a conversation during the trial between a juror and a deputy sheriff concerning a gospel group in which the deputy sang, since defendant could not have been prejudiced by the conversation.

APPEAL by defendant from *McLelland, Judge.* Judgment entered 21 March 1977 in Superior Court, HARNETT County. Heard in the Court of Appeals 8 December 1977.

Defendant was charged with armed robbery, found guilty as charged, and appeals from judgment imposing a prison term of 25 years.

The evidence for the State tends to show that about 5:00 p.m. on 12 January 1977, defendant and Dale Ray went to the trailer home of a friend, Jesse Miller, and his girl friend, Gwendolyn McCauley. While there, defendant pulled a pistol from his pocket and playfully said, "This is a stick-up." Miller let them borrow his automobile, and they left about 6:00 p.m.

They were seen in Miller's car about 6:20 or 6:30 p.m. at a service station near Ann's Grocery.

About 6:30 p.m. two men wearing stocking masks, one identified as Dale Ray, entered Ann's Grocery, operated by Ann McCormick, who was present with her husband. Ray had a pistol, the other man a sawed-off shotgun. They said, "This is a holdup." Mrs. McCormick told them to leave and walked to the door leading to a kitchen. As she was closing the door, the shotgun fired, and she was struck in the forehead by pellets. Mr. McCormick, at the request of the two men, opened the cash register, removed $25 and gave it to them. The man with the shotgun was wearing black gloves. He dropped a glove, picked it up and put it in his pocket. The two men left on foot. Mr. McCormick found a black glove near the doorway of the store. He called the sheriff.

Defendant and Dale were seen together in Miller's car about 6:50 or 6:55 p.m. at a service station about two miles from Ann's Grocery. While they were there several vehicles of the sheriff's department passed the service station.

Defendant alone returned the car to Miller about 10:00 p.m. About 5:00 p.m. on the following day, Gwendolyn McCauley, Miller's girl friend, found a single black glove on the floor of Miller's car.

Defendant testified that he was not with Dale Ray at the time of the robbery but was with others watching the news on television. His testimony was corroborated by others. His mother testified that the pistol in her son's possession was a plastic toy pistol which she found and gave to him.

*Attorney General Edmisten, by Assistant Attorney General Joan H. Byers, for the State.*

*Morgan, Bryan, Jones, Johnson, Hunter & Greene, by C. M. Hunter, for defendant appellant.*

MORRIS, Judge.

Defendant assigns as error the denial of his motion for nonsuit and bases his argument on two grounds: (1) the insufficiency of the evidence, and (2) variance in the charge (the indictment alleging that the money was taken "from the presence, person, place of business of Elizabeth Ann McCormick") and the proof (evidence that the money was taken from the person and presence of Mr. McCormick).

[1] Turning first to the sufficiency of the evidence, it is established that Dale Ray and another acted in concert in committing the armed robbery. Dale and defendant were together at 5:30 p.m. when they left the Miller home in the car Miller had loaned to defendant. The time of the commission of the crime was fixed at about 6:30 p.m. by testimony of the victims that the perpetrators entered Ann's Grocery a few minutes after the local newscast on television. Dale and defendant were seen together in Miller's car minutes before 6:30 at a service station a few miles from Ann's Grocery, and they were seen together again a few minutes after 6:30 at another service station a few miles from Ann's Grocery. Black gloves were worn by the unidentified perpetrator, and he dropped one of the gloves at the scene of the crime. On the following day a similar black glove was found on the floor of Miller's car. This evidence, together with the other evidence considered in the light most favorable to the State, reasonably conduces to the conclusion as a fairly logical and legitimate deduction that defendant was the unidentified person with Dale and that they committed the armed robbery in concert. *See State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956). The State's evidence on the issue of identity is circumstantial, but the test of the sufficiency of the evidence to withstand a motion for nonsuit is the same whether the evidence is circumstantial, direct, or both. *State v. McKnight*, 279 N.C. 148, 181 S.E. 2d 415 (1971); *State v. McCuien*, 15 N.C. App. 296, 190 S.E. 2d 386 (1972). The defendant's motion for nonsuit on grounds of insufficiency of the evidence was properly denied.

[2] The variance between the charge and the proof is not fatal. The armed robbery was a single, continuous course of conduct that lasted only a few minutes from the entry, when both Mr. and Mrs. McCormick were present, until the perpetrators left. Mrs. McCormick walked from the store to an adjoining room and was shot by the unidentified robber as she closed the door. It is not clear whether she was in the adjoining room or outside seeking help when the money was taken. The main element of the offense of armed robbery is the force or intimidation occasioned by the use or threatened use of firearms. *State v. Lynch*, 266 N.C. 584, 146 S.E. 2d 677 (1966); *State v. Black*, 286 N.C. 191, 209 S.E. 2d 458 (1974); *State v. Johnson*, 20 N.C. App. 53, 200 S.E. 2d 395 (1973).

Mrs. Ann McCormick left the store area and went to an adjoining room immediately after the perpetrators intimidated her by the threatened use of firearms and announced that it was a holdup. At that stage, before taking the money from Mr. McCormick, there was a completed crime under G.S. 14-87. The offense is complete if there is either a taking or an attempt to take the personal property of another by the means and in the manner prescribed by G.S. 14-87. *State v. Evans*, 279 N.C. 447, 183 S.E. 2d 540 (1971).

[3] In the case *sub judice* the indictment alleges "from the presence, person, place of business, of Elizabeth Ann McCormick." We note that G.S. 14-87 provides "from . . . any other place where there is a person or persons in attendance. . . ." The statutory language is much broader than the indictment language, and the district attorney may find it advisable to use the statutory language in indictments for armed robbery to avoid problems of proof that may arise if the more restrictive common law language is used. The word "presence" must be interpreted broadly and with due consideration to the main element of the crime — intimidation or force by the use or threatened use of firearms. "Presence" here means a possession or control by a person so immediate that force or intimidation is essential to the taking of the property. And if the force or intimidation by the use of firearms for the purpose of taking personal property has been used and caused the victim in possession or control to flee the premises and this is followed by the taking of the property in a continuous course of conduct, the taking is from the "presence" of the victim. *See State v. Dunn*, 26 N.C. App. 475, 216 S.E. 2d 412 (1975); *State v. Reaves*, 9 N.C. App. 315, 176 S.E. 2d 13 (1970).

The variance in the case *sub judice* could not subject the defendant to double jeopardy. The "same evidence" rule would protect him from prosecution for armed robbery in the "presence" of Mr. McCormick. Only one crime of armed robbery was committed, even though two persons were forced or intimidated by the use of firearms. *State v. Potter*, 285 N.C. 238, 204 S.E. 2d 649 (1974); *State v. Ballard*, 280 N.C. 479, 186 S.E. 2d 372 (1972). We find no fatal variance, and this assignment of error is overruled.

[4] Defendant moved for mistrial for jury misconduct in that (1) the sheriff remarked to defense counsel when a juror was nearby

that "I understand your boys are about to enter guilty pleas in this case.", and (2) during trial Deputy Sheriff Rosser, a State's witness, was approached by a juror and asked the name of his singing group and how to get in contact with the manager. Deputy Rosser gave him a calling card.

The trial court conducted a voir dire hearing. We agree with the observation of the trial judge made during *voir dire* that the statement of the sheriff might influence the juror and corrupt a verdict, but the juror testified that he did not hear the statement, and the court so found. The trial court further found that the conversation between the juror and Deputy Rosser was short and related solely to the gospel group in which the deputy sang. The findings are amply supported by the evidence and are conclusive on review by this Court. *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1972).

The finding by the trial court that the juror did not hear the statement made by the sheriff is determinative of that situation. The short conversation between the deputy and the juror about a subject foreign to the case being tried, though not approved, does not constitute misconduct prejudicial to the defendants that would require a new trial. A conversation between a juror and a third party is not grounds for a new trial unless it is of such character as is calculated to impress the case upon the mind of the juror in a different aspect than was presented at trial, or is of such a nature as is calculated to result in harm to a party on trial. *State v. Waddell*, 279 N.C. 442, 183 S.E. 2d 644 (1971).

We have carefully considered the other assignments of error and find them to be without merit.

No error.

Judges HEDRICK and ARNOLD concur.