STATE OF NORTH CAROLINA v. ALBERT HILTON TUCK, JR.

No. COA04-1077

(Filed 6 September 2005)

**1. Robbery— sufficiency of evidence—victim's awareness of defendant's intent**

A conviction under N.C.G.S. § 14-87 (armed robbery) does not depend upon the defendant's pronouncement of his intentions or his directions to the victim. There was no error here sur-

rounding the failure to dismiss the charge and the verdict where defendant never spoke to the victim because she ran screaming from the store, but the evidence clearly established defendant's intentions on entering the store.

2. **Identification of Defendants— in-court—perception during robbery—not inherently incredible**

The credibility of a witness's identification testimony is for the jury and should be suppressed only on a finding that it is inherently incredible. The armed robbery victim here had personal knowledge of defendant from her perception of him during the robbery, even though it was brief, and her in-court identification was not inherently incredible.

3. **Appeal and Error— admission of confession—pretrial motion to suppress denied—no objection at trial**

Defendant did not properly preserve an issue for appeal (although it was heard under Appellate Rule 2) where he filed a pretrial motion to suppress his confession but did not object at trial. Legislation foregoing objections after a definitive evidence ruling (N.C.G.S. § 8C-1, Rule 103(a)(2)) has been held to fail to the extent that it conflicts with Appellate Rule 10(b)(1).

4. **Confessions and Incriminating Statements— defendant under the influence of narcotics—aware of his words**

The trial court did not err by admitting defendant's custodial confession despite his claim that he was under the influence of Percocet and Oxycontin and did not voluntarily waive his rights. The trial court's conclusion that defendant was not impaired to the extent that it affected his ability to voluntarily waive his rights was supported by the findings and the evidence, and there was no indication that defendant was in a condition leaving him unconscious of the meaning of his words.

5. **Evidence— third-party forcing confession—excluded—not prejudicial**

To the extent that there was error in excluding evidence that defendant was threatened into confession by another individual, that error was not prejudicial given the overwhelming evidence of defendant's guilt and the admission of much of the excluded evidence during the direct examination of defendant.

**STATE v. TUCK**

[173 N.C. App. 61 (2005)]

**6. Sentencing— presumptive and mitigated ranges—no error**

There was no error in the sentencing of defendant for multiple convictions of armed robbery where defendant received two sentences in the presumptive range and four in the mitigated range. He was not entitled to a sentence in the mitigated range for each conviction solely because his sentences in other convictions were in the mitigated range.

Appeal by defendant from judgment entered 5 April 2004 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 6 June 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Linda Kimbell, for the State.*

*Anne Bleyman for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Albert Hilton Tuck, Jr. ("defendant"), appeals his conviction for six counts of robbery with a dangerous weapon. For the reasons discussed herein, we hold that defendant received a trial free of prejudicial error.

The State's evidence presented at trial tends to show the following: On 26 November 2003, June Matal ("Matal") and Lois Ellen Smarella ("Smarella") were at Suzio's at Six Forks Station, a women's boutique located in Raleigh, North Carolina. Defendant entered the store, pointed a gun at Matal and Smarella, and ordered Smarella to open the store's cash register. After Smarella was unable to open the cash register, defendant ordered Matal and Smarella to go to the back of the store. Defendant thereafter took money from the cash register and left the store.

On 1 December 2003, Heather Hester ("Hester") was working at KooKaburra Kids, a children's clothing store located in Raleigh and owned by Hester. As Hester was wrapping presents for a customer, defendant entered the store and pointed a gun at her. Defendant ordered Hester to open the store's cash register, and, after "fumbling through" it, he asked Hester if the cash inside the register was all the money she had. Hester replied that it was, and she and an employee of KooKaburra Kids went into a dressing room "to get away." Defendant thereafter took the money from the cash register and left the store.

On 2 December 2003, Laura Maria Scott ("Scott") was working at the Gingerbread House, a florist located in Raleigh and owned by Scott. As Scott was on the telephone, defendant approached Scott, pointed a gun at her, and ordered her to give him her money. Scott thereafter opened the store's cash register, and defendant took between $130.00 and $150.00 from the register and left the store.

On 5 December 2003, Kathleen Elisa Henderson ("Henderson") was working at Triangle Nutrition, a health store located in Raleigh. As Henderson was taking inventory at the front of the store, defendant entered the store, pointed a gun at Henderson, and ordered her to "give him all the money out of the drawer." Henderson opened the store's cash register and gave defendant approximately $350.00. Defendant thereafter left the store.

On 9 December 2003, Karla Pyrtle ("Pyrtle") was working at Shop 20-12, a women's boutique located in Raleigh. After hearing the front door bell of the store chime, Pyrtle exited an office and saw defendant pointing a gun at her. Pyrtle immediately "started screaming" and ran out of the store. When Pyrtle returned to the store, approximately $200.00 had been taken from the store's cash register.

On 16 December 2003, Jennifer Dawn Johnson ("Johnson") was working at the Raleigh Cat Clinic, a veterinarian hospital located in Raleigh. Defendant entered the hospital, pointed a gun at Johnson, and asked her if anyone else was at the hospital. After Johnson informed defendant that a doctor was at the hospital, defendant ordered Johnson to show him the office. Once inside the office, defendant ordered Johnson to open the doctor's purse, and, after doing so, Johnson handed the doctor's wallet to defendant. Defendant took approximately $100.00 in cash out of the wallet, and he asked Johnson "what else" was in the office. Johnson gave defendant the "petty cash" folder, and defendant took approximately $200.00 from it. After ordering Johnson to lay down on the floor of the x-ray room, defendant left the hospital.

On 29 December 2003, Oxford Police Department Sergeant Mark Blair ("Sergeant Blair") went to defendant's residence in Vance County to question defendant about another matter. Two detectives from the Vance County Sheriff's Office and a detective from the Henderson Police Department accompanied Sergeant Blair to defendant's residence, and Sergeant Blair was notified that officers from the Raleigh Police Department were also on their way to the residence. After the officers approached his front door, defendant

asked them to come inside his residence. After advising defendant of his *Miranda* rights, the officers began questioning defendant about a firearm. Defendant initially informed the officers that he had "tossed" the firearm "into a pond" located near his residence. However, defendant later informed the officers that the firearm was located inside a vehicle parked in the driveway. Sergeant Blair thereafter searched the vehicle and discovered a loaded, .38 caliber revolver inside the glove box.

Raleigh Police Department Detective G.R. Passley ("Detective Passley") arrived at defendant's residence after the other officers. Detective Passely suspected defendant was involved in the robberies, and he questioned defendant about clothing the witnesses of the robberies had described the assailant wearing. Defendant told Detective Passley that he had previously thrown away several shirts and other articles of clothing used in the robberies, but that some shirts were inside another vehicle parked in his driveway. Detective Passley found a white t-shirt inside the vehicle, and he noted that it was cut in the back. Defendant informed Detective Passley that he had cut the shirt to enable him to easily pull the shirt over his face during the commission of the robberies.

Defendant was arrested and transported to the Vance County Sheriff's Department. After again advising defendant of his *Miranda* rights, Detective Passley asked defendant if he wanted to make a statement regarding the robberies. Defendant replied that he did, and he thereafter confessed to each of the six robberies.

On 9 February 2004, defendant was indicted for six counts of robbery with a dangerous weapon. Prior to trial, defendant moved to suppress his custodial confession, arguing that he was intoxicated and under the influence of several drugs at the time he was interviewed. The trial court denied defendant's motion, and his case proceeded to trial the week of 29 March 2004. At trial, defendant testified on his behalf, and he attempted to offer evidence that he was threatened into confession by another individual, who defendant contended had actually committed the crimes. The trial court excluded evidence of the individual's threats to defendant, concluding that the testimony contained hearsay statements used to prove the truth of the matters asserted therein. On 5 April 2004, the jury returned a guilty verdict on each of the charges. The trial court thereafter sentenced defendant to 324 to 446 months incarceration. Defendant appeals.

We note initially that defendant's brief does not contain arguments supporting each of the original nineteen assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2005), the omitted assignments of error are deemed abandoned. Therefore, we limit our present review to those issues argued by defendant in his brief.

The issues on appeal are whether the trial court erred by: (I) denying defendant's motion to dismiss the charge of robbery of Pyrtle with a dangerous weapon; (II) failing to set aside the verdict on the charge of robbery of Pyrtle with a dangerous weapon; (III) allowing Pyrtle's in-court identification of defendant; (IV) denying defendant's motion to suppress his confession; (V) excluding evidence regarding any threats defendant may have received that prompted the confession; and (VI) refusing to sentence defendant in the mitigated range for each charge.

**[1]** Defendant first argues that the trial court erred by denying his motion to dismiss the charge of robbery of Pyrtle with a dangerous weapon. Defendant asserts that the State presented insufficient evidence to demonstrate that the taking occurred "from the person or in the presence" of Pyrtle. We disagree.

In order to withstand a motion to dismiss a charge of robbery with a dangerous weapon, the State must present substantial evidence that the defendant: (1) unlawfully took or attempted to take personal property from a person or in the presence of another; (2) by the use or threatened use of a dangerous weapon, implement, or means; and (3) thereby endangered or threatened the life of a person. *State v. Kemmerlin,* 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002); N.C. Gen. Stat. § 14-87(a) (2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin,* 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis,* 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998).

In the instant case, defendant contends that because Pyrtle ran out of the store immediately upon seeing defendant with the weapon, the subsequent taking did not occur from her person or in her presence as contemplated by N.C. Gen. Stat. § 14-87. However, this Court has previously stated that

The word "presence" [under N.C. Gen. Stat. § 14-87] must be interpreted broadly and with due consideration to the main element of the crime—intimidation or force by the use or threatened use of firearms. "Presence" here means a possession or control by a person so immediate that force or intimidation is essential to the taking of the property. And if the force or intimidation by the use of firearms for the purpose of taking personal property has been used and caused the victim in possession or control to flee the premises and this is followed by the taking of the property in a continuous course of conduct, the taking is from the "presence" of the victim.

*State v. Clemmons*, 35 N.C. App. 192, 196, 241 S.E.2d 116, 118-19 (citations omitted), *disc. review denied*, 294 N.C. 737, 244 S.E.2d 155 (1978); *see also State v. Dunn*, 26 N.C. App. 475, 476, 216 S.E.2d 412, 414 (1975) ("The evidence that defendant and his companions picked up the groceries, after they had threatened, beaten and driven [the victim] away, also satisfies the element of a taking."); *State v. Reaves*, 9 N.C. App. 315, 317, 176 S.E.2d 13, 15 (1970) (concluding that "the elements of violence and of taking [were] so joined in time and circumstance as to be inseparable" where "[t]he car and gun were not abandoned or left unattended when they were taken by the defendant; [the] defendant had driven their custodian away by a vicious and murderous assault.").

In *Clemmons*, after being threatened by the defendant with force and shot by an unidentified robber, the victim fled to an adjoining room while her husband gave money to the defendant. On appeal, we held that the evidence supported the conviction for armed robbery of the victim. 35 N.C. App. at 195-96, 241 S.E.2d at 118-19. Similarly, in *State v. Edwards and State v. Nance*, 49 N.C. App. 547, 559, 272 S.E.2d 384, 393 (1980), we rejected one defendant's argument that the trial court had erred by denying his motion to dismiss, noting that from the evidence presented at trial, "it was reasonable to infer that [the defendant] had attempted to frighten [the victim] and that, as soon as she left the house, he went back into the bedroom and took property which did not belong to him." Likewise, in *State v. Herring*, 74 N.C. App. 269, 271, 328 S.E.2d 23, 25 (1985), *aff'd per curiam*, 316 N.C. 188, 340 S.E.2d 105 (1986), we held there was sufficient evidence to warrant an instruction on armed robbery where the evidence tended to show that one of the defendants "discharged a gun into the [victim's] vehicle, that the occupant fled the scene, and that several items of personal property were missing from the vehicle when he returned."

In the instant case, Pyrtle testified that she fled the store after defendant approached her with a handgun. Defendant attempts to distinguish the above-detailed case law from the facts of the instant case by asserting that Pyrtle "was not aware of what crime was being attempted" because defendant "never asked [Pyrtle] for money or spoke to her." However, we are not convinced that a conviction under N.C. Gen. Stat. § 14-87 depends upon the defendant's pronouncement of his intentions or his directions to the alleged victim. Instead, we note that "[t]he use of a weapon to frighten or intimidate a robbery victim is the main element of armed robbery." *State v. Haddick*, 76 N.C. App. 524, 525, 333 S.E.2d 518, 520 (1985). Furthermore, we note that the evidence presented at trial clearly establishes defendant's intentions upon entering the store. Pyrtle testified that defendant approached her store while she was in the rear office, and when she opened the door, defendant was wearing a mask and pointing a gun at her. Pyrtle testified that the "mask" worn by defendant "cover[ed] everything but his eyes." Pyrtle remembered defendant's gun "pointed at [her] the whole time when [she] ran out of the store[,]" and she recalled defendant "try[ing] to resist [her] with his hand." Pyrtle testified that she was "hysterical" and "didn't let" defendant speak "because [she] was just pretty much going crazy." When Pyrtle returned to the store, she discovered approximately $200.00 was missing from the cash register. In light of the foregoing, we conclude that the State produced sufficient evidence from which the jury could find that defendant took property from Pyrtle's person or in her presence, despite Pyrtle's flight during the incident. Accordingly, we overrule defendant's first argument.

Defendant next argues that the trial court erred by failing to set aside the jury's verdict on the charge of robbery of Pyrtle with a dangerous weapon. Defendant contends that the trial court abused its discretion by not setting aside the verdict *ex mero motu*. Alternatively, defendant contends that his trial counsel provided ineffective assistance by failing to move to dismiss the verdict. In support of these contentions, defendant reasserts his arguments regarding the insufficiency of the evidence demonstrating that a taking occurred in Pyrtle's presence.

This Court has previously held that

Failure to set aside the verdict *ex mero motu* [is] reviewable only in the situation in which the jury's verdict is manifestly unjust and against the greater weight of the evidence. If there is sufficient

evidence to support the verdict, the trial judge has acted within his or her discretion in denying the motion, or in failing to act *sua sponte* to set it aside.

*State v. Mack*, 81 N.C. App. 578, 584, 345 S.E.2d 223, 226-27 (1986). In the instant case, as detailed above, the State offered sufficient evidence to withstand defendant's motion to dismiss the charge of robbery of Pyrtle with a dangerous weapon. Therefore, we conclude that the trial court did not err by failing to set aside the verdict on the charge *ex mero motu*. Similarly, because we have examined the evidence presented by the State and found it sufficient, we are not persuaded that, but for his trial counsel's refusal to move to set aside the verdict, "there is a reasonable probability that . . . the result of the proceeding [against defendant] would have been different." *Strickland v. Washington*, 466 U.S 668, 694, 80 L. Ed. 2d 674, 698 (1984). Accordingly, we overrule defendant's second argument.

**[2]** Defendant next argues that the trial court committed plain error by allowing Pyrtle to identify defendant at trial as the individual who robbed her store. Defendant asserts that the identification should have been excluded because it was unreliable. We disagree.

"A prerequisite to our engaging in a 'plain error' analysis is the determination that [the trial court's action] complained of constitutes 'error' at all." *State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986). We note that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." N.C. Gen. Stat. § 8C-1, Rule 602 (2003). "This rule is designed to prevent a witness from testifying to a fact about which he has no direct, personal knowledge." *State v. Poag*, 159 N.C. App. 312, 323, 583 S.E.2d 661, 669, *disc. review denied*, 357 N.C. 661, 590 S.E.2d 857 (2003). Furthermore, "[a] witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe and must have actually observed the facts. . . . '[P]ersonal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception.' " N.C. Gen. Stat. § 8C-1, Rule 602 (Commentary (quoting Advisory Committee's Notes)).

In the instant case, Pyrtle testified at trial that she has "always been an observant person" and that she focused on the "eyes and the kind of hair" of the individual who robbed her. She testified that the individual's eyes were "very noticeable[,]" and on cross-examination,

she testified that she and the individual were in the store together for "40, 45 seconds." She further testified that although the individual was wearing "something covering his face[,]" she could "clearly see his face[,]" including "[t]he bridge of his nose." Pyrtle testified that the individual had brown hair, weighed approximately 185 pounds, and was approximately 5'10" tall. She stated that the picture of defendant shown to her by the State was "the robber[,]" and that it was consistent with "all the descriptions from what [she] did see of him."

In light of the foregoing evidence, we conclude that Pyrtle had personal knowledge of defendant stemming from her perception of him during the robbery. Defendant maintains that Pyrtle's identification should have been excluded because she had only forty-five seconds to observe her assailant, and because it was "based in part on a composite shown on the news." However, "[t]he credibility of a witness's identification testimony is a matter for the jury's determination, and only in rare instances will credibility be a matter for the court's determination." *State v. Green*, 296 N.C. 183, 188, 250 S.E.2d 197, 200-01 (1978) (citations omitted). Where an in-court identification is objected to, the identification should be suppressed "[o]nly if there is a finding that the identification testimony 'is inherently incredible because of the undisputed facts . . . as to the physical conditions under which the alleged observation occurred[.]' " *Id.* at 189, 250 S.E.2d at 201 (quoting *State v. Miller*, 270 N.C. 726, 731, 154 S.E.2d 902, 905 (1967)). In the instant case, we are not persuaded that Pyrtle's in-court identification is inherently incredible. Therefore, we conclude that the trial court did not err by allowing Pyrtle's in-court identification of defendant. Accordingly, we overrule defendant's third argument.

**[3]** Defendant next argues that the trial court erred by denying his motion to suppress his confession. Defendant asserts that the confession should have been suppressed because his statements to officers were involuntary, in that he was under the influence of the prescription drugs Percocet and OxyContin at the time he made the statements. As an initial matter, we note that although he filed a pretrial motion to suppress his confession, defendant failed to object to presentation of this evidence at trial. Furthermore, although defendant alternatively assigned plain error to this issue, defendant failed to offer any support in his brief for the plain error assignment, and therefore he has abandoned that method of review. *See State v. Nobles*, 350 N.C. 483, 514-15, 515 S.E.2d 885, 904 (1999). Our courts

STATE v. TUCK

[173 N.C. App. 61 (2005)]

have previously held that questions regarding the admissibility of evidence are not preserved merely by a pre-trial motion *in limine;* instead, the defendant is required to reassert his objection at trial when the evidence is offered. *See State v. Hayes,* 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999) (per curiam). Although our legislature has recently enacted legislation providing that "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal[,]" N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) (2003), this Court has recently held that "to the extent that N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) is inconsistent with N.C. R. App. P. 10(b)(1), it must fail." *State v. Tutt,* 171 N.C. App. 518, 524, 615 S.E.2d 688, —— (2005); *but see State v. Rose,* 170 N.C. App. 284, 288, 612 S.E.2d 336, 339 (Filed 17 May 2005) (No. COA04-353) ("Since the trial in this case occurred two months following the effective date of the amendment [of Rule 103], once the trial court denied defendant's motion to suppress, he was not required to object again at trial in order to preserve his argument for appeal."), *disc. review denied,* 359 N.C. 641, —— S.E.2d —— (Filed 30 June 2005) (No. 296P05). In the instant case, to the extent defendant has failed to properly preserve this issue for appeal, we have nevertheless chosen to review defendant's argument in our discretion pursuant to N.C.R. App. P. 2. As detailed below, we conclude that the trial court did not err.

[4] The record reflects that prior to trial, defendant moved to suppress his confession on the grounds that it was involuntarily given, in that defendant was under the influence of Percocet and OxyContin when he was interviewed. After receiving evidence and hearing argument from both parties during *voir dire,* the trial court disagreed, concluding that defendant "fully understood his Miranda rights, . . . knowingly waived his Miranda rights, and . . . voluntarily made statements to the law enforcement officers." In support of its conclusion, the trial made the following pertinent findings of fact:

> 5. Defendant has testified at this hearing that he voluntarily took Percocet and OxyContin on December 29th, 2003. Court has also heard evidence from the law enforcement officers present in his home and outside his home that the defendant appeared alert and responded to all questions. There is further testimony that the defendant did not appear impaired to the law enforcement officers.

6. Court finds that the defendant was not impaired to the extent that it affected his ability to voluntarily, knowingly and understandingly waive his Miranda rights.

. . . .

8. The defendant was arrested in his home and taken to the Vance County Sheriff's office where he was again advised of his Miranda rights at 1920 hours on December 29, 2003.

9. The defendant did voluntarily, knowingly and understandingly waive his Miranda rights . . . .

"Whether a confession was voluntarily given is to be determined from the totality of the circumstances surrounding the confession." *State v. Greene*, 332 N.C. 565, 579, 422 S.E.2d 730, 738 (1992). "[W]hile they are factors to be considered, intoxication and subnormal mentality do not of themselves necessarily cause a confession to be inadmissible because of involuntariness or the ineffectiveness of a waiver." *State v. Barnes*, 345 N.C. 184, 245, 481 S.E.2d 44, 78 (1997), *cert. denied*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998). Instead, the confession "is admissible unless the defendant is so intoxicated that he is unconscious of the meaning of his words." *State v. Oxendine*, 303 N.C. 235, 243, 278 S.E.2d 200, 205 (1981). "The trial court is to determine whether the State has borne its burden of showing, by a preponderance of the evidence, that [the] defendant's confession was voluntary. The factual findings by the trial court are binding on appeal if supported by competent evidence; however, conclusions of law are fully reviewable." *State v. Perdue*, 320 N.C. 51, 59, 357 S.E.2d 345, 350 (1987) (citations omitted).

In the instant case, we conclude that the trial court's findings of fact were supported by competent evidence. During *voir dire*, Sergeant Blair testified that defendant was attentive when read his *Miranda* rights, and that defendant did not act unusual or otherwise suggest he was impaired. Sergeant Blair testified that defendant answered the questions asked of him, did not make any unusual physical movements, and "didn't appear to be under the influence of anything." Although Henderson Police Department Sergeant Sandra Lawhorn ("Sergeant Lawhorn") remembered defendant taking medication given to him by his wife for his "back problems[,]" she testified that she did not notice anything unusual about defendant's appearance or interaction with officers. Vance County Sheriff's Department Sergeant Steve Lyles ("Sergeant Lyles") testified that

defendant "definitely didn't appear to be impaired" when questioned, and that defendant's demeanor did not change during questioning. Sergeant Lyles further testified that defendant appeared to be listening when read his *Miranda* rights, and that he was "[v]ery coherent" and "very understanding." Detective Passley also testified that defendant did not do anything unusual during questioning, and that his demeanor did not change at any point during the interview. Although we note that defendant offered testimony contradicting the officers' testimony, we also note that discrepancies and contradictions involving the voluntariness of a confession are for the trial court to resolve in its findings of fact.

> Whether the defendant did or did not make the statement attributed to him is a question of fact to be determined by the jury from the evidence admitted in its presence. Whether the statement, assuming it to have been made, was made voluntarily and understandingly, so as to permit evidence thereof to be given in the presence of the jury, is a question of fact to be determined by the trial judge in the absence of the jury upon the evidence presented to him in the jury's absence. . . . The trial judge should make findings of fact with reference to this question and incorporate those findings of fact in the record. . . . No reviewing court may properly set aside or modify those findings if so supported by competent evidence in the record.

*State v. Gray*, 268 N.C. 69, 78, 150 S.E.2d 1, 8 (1966) (citations omitted).

As detailed above, the trial court's findings of fact in the instant case are supported by competent evidence, and they support its conclusion of law. There is no indication in the record that defendant's alleged impairment amounted to "mania—that is, [a condition leaving him] unconscious of the meaning of his words[.]" *State v. Logner*, 266 N.C. 238, 243, 145 S.E.2d 867, 871 (1966). Therefore, we conclude that the trial court did not err by admitting defendant's custodial confession. Accordingly, we overrule defendant's fourth argument.

[5] Defendant next argues that the trial court erred by excluding evidence tending to show that he was threatened into confession by another individual. Defendant asserts that the evidence was admissible because it was offered to explain his rationale for confessing, and that therefore the trial court committed reversible error by excluding it. We disagree.

At trial, defendant testified on his own behalf and attempted to offer evidence tending to show that he was threatened into confession by Charles Vick ("Vick"), whom defendant's wife, Marcy Clark-Tuck ("Marcy"), had implicated in the robberies. During her testimony, Marcy described "inadvertently" helping Vick "rob these places" by "dropp[ing] him off in the vicinity about the same time that [the robberies] happened." On direct examination, defendant was asked why he confessed to the robberies. In response, defendant stated that he was "threatened" by "an individual known by the name Charles Vick [who] had approached [defendant] earlier, probably a week before the cops arrived at [his] house." The State objected to defendant's attempt to testify as to what Vick said to him, and during *voir dire*, defendant provided the following pertinent testimony as an offer of proof:

Q. Mr. Tuck, what did Mr. Vick tell you?

A. He said—he said there is some stuff probably might come up. He said you could say yes or no. He said it would probably be more beneficial if you said yes for what they accuse you of. He said you ain't got a bad record. You will probably get a slap on the wrist.

Q. What . . . exactly did Mr. Vick tell you had happened in Raleigh?

A. He told me stories about places he had robbed, stuff he had done. He told me several stores. Named quite a few.

. . . .

Q. He named all six places?

A. Yep. And a few more at that, too.

Q. Now, why did you confess to the robberies?

A. He said he'd hurt my family if I didn't.

. . . .

Q. What reason did you have to believe that?

A. He is a bad person.

Q. Okay. What do you mean he is a bad person?

A. He had been in and out of prison since he was 16. He has been known to actually go to the person's front door, and when they

come to the door he'd grab them and rob them right there. Last time I was in the prison he attacked a woman in her own house with a pump action and his partner in crime was shot in the stomach at the same time in the same robbery. I have known him to break into several businesses. I have known him to rob old ladies of jewelry, lots of stuff.

Following argument from both parties, the trial court concluded that the testimony was "being offered to prove the truth of the matter asserted therein and it is hearsay." After noting that Vick was not present for cross-examination, the trial court sustained the State's objection to the testimony.

On appeal, defendant contends that the trial court erred by ruling that the testimony was inadmissible hearsay. Assuming *arguendo* that the trial court erred, we note that a trial court's refusal "to admit or exclude evidence will not result in the granting of a new trial absent a showing by the defendant that a reasonable possibility exists that a different result would have been reached absent the error." *State v. Macon*, 346 N.C. 109, 117, 484 S.E.2d 538, 543 (1997). In the instant case, defendant has failed to make such a showing. As detailed above, the State presented evidence from owners and employees of each of the businesses allegedly robbed by defendant. Henderson, Pyrtle, and Johnson each identified defendant as the individual who robbed their store. Matal testified that she "picked out a picture in the book that was him and—and [she] picked it out from the eyes and the eyes were like [defendant's]." Scott testified that defendant "look[ed] very much like the person that [she] believed" robbed her. Each witness described the weapon used in the robberies as similar to the one obtained by law enforcement officers at defendant's residence. The State also presented testimony from Andy Parker ("Agent Parker"), a latent print examiner for the City County Bureau of Identification of Wake County. Agent Parker testified that defendant's fingerprints were found on the front door handle of the Gingerbread House, the petty cash envelope of the Raleigh Cat Clinic, the front door handle of the Raleigh Cat Clinic, and the front door handle of the x-ray room of the Raleigh Cat Clinic. In his confession, defendant provided a detailed description of each of the robberies, including where they occurred, what dates they occurred on, how many individuals were inside each store, what took place once he was inside the stores, how much money he took from each store, and where he parked his car prior to entering the stores. On direct examination, the trial court allowed defendant to testify that he confessed to the crimes because

he "thought it would protect [his] family" and "thought that [his] family's life was in danger and [he] had to do whatever it took." In light of the foregoing evidence, we conclude that, to the extent the trial court erred by sustaining the State's objection, defendant has failed to demonstrate that a different result would have been reached absent this error. The State offered overwhelming evidence of defendant's guilt, and much of the evidence presented by defendant during *voir dire* was actually admitted during defendant's direct examination. Accordingly, we overrule defendant's fifth argument.

**[6]** Defendant's final argument is that the trial court erred by sentencing him in the presumptive range for two convictions, but in the mitigated range for the other four convictions. Defendant asserts that the trial court considered improper and irrelevant factors in sentencing him in the presumptive range. We disagree.

The record in the instant case reflects that with respect to the armed robbery of Hester and the armed robbery of Henderson, the trial court sentenced defendant in the presumptive range. Prior to sentencing defendant for the armed robbery of Hester, the trial court noted that "there was a small child who was with a customer in the store" when the robbery was committed. Prior to sentencing defendant for the armed robbery of Henderson, the trial court noted that "since the robbery occurred [Henderson] has been seeing a counselor." Citing the trial court's statements, defendant contends that the trial court "improperly aggravated" his sentence "even though there were no written find[ing]s of aggravation."

In *State v. Pope*, our Supreme Court concluded that

In our opinion it would not be in the interest of justice to put a trial judge in a straitjacket of restrictive procedure in sentencing. . . . There is a presumption that the judgment of a court is valid and just. The burden is upon [the] appellant to show error amounting to a denial of some substantial right. A judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to [the] defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.

257 N.C. 326, 335, 126 S.E.2d 126, 133 (1962) (citation omitted).

After reviewing the record in the instant case, we conclude that defendant has failed to demonstrate a "denial of some substantial

right." *Id.* Although it is clear that the trial court considered a witness's age and a victim's resulting injuries while sentencing defendant for two particular convictions, the trial court nevertheless chose to sentence defendant within the presumptive range mandated by our legislature and approved by our courts. We are not persuaded that defendant was entitled to a sentence in the mitigated range for each conviction solely because his sentences in other convictions were in the mitigated range. Furthermore, because defendant was sentenced in the mitigated and presumptive ranges and the trial court did not find any aggravating factors, defendant's assertions regarding the impact of *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004) to his case are without merit. *See State v. Allen*, 359 N.C. 425, 615 S.E.2d 256 (Filed 1 July 2005) (No. 485PA04). Accordingly, we overrule defendant's final argument.

In light of the foregoing conclusions, we hold that defendant received a trial free of prejudicial error.

No error.

Chief Judge MARTIN and Judge WYNN concur.