STATE OF NORTH CAROLINA v. DANNY DEAN FROGGE

No. 413A95

(Filed 7 March 1997)

**Evidence and Witnesses § 3107 (NCI4th)— prior inconsistent statement—inadmissibility for corroboration—prejudice to defendant**

In a prosecution of defendant for the first-degree murders of his father and stepmother, a witness's prior inconsistent statement to the police as to what defendant told him about the murders was inadmissible hearsay and improperly admitted under the guise of corroboration. Furthermore, defendant was prejudiced by the erroneous admission of this statement where the witness's trial testimony tended to show that defendant's father had provoked him by hitting him with a metal bar before defendant stabbed him, but his prior statement suggested that defendant started stabbing his father before he was hit with a metal bar, thus weakening defendant's case for a lesser verdict; inconsistencies between the witness's prior statement and his trial testimony as to when defendant took money from his father's wallet went to the heart of the prosecution's case for felony murder; and the witness testified at trial that defendant gave no indication as to why he stabbed his stepmother, but his prior statement provided a motive and *means rea* for first-degree murder by suggesting that he hated his stepmother.

**Am Jur 2d, Witnesses §§ 929, 930.**

**Use or admissibility of prior inconsistent statements of witness as substantive evidence of facts to which they relate in criminal case—modern state cases. 30 ALR4th 414.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing one sentence of death and another of life imprisonment entered by Wood, J., on 13 September 1995 in Superior Court, Forsyth County, upon jury verdicts finding defendant guilty of two counts of first-degree murder. Heard in the Supreme Court 11 February 1997.

*Michael F. Easley, Attorney General, by David Roy Blackwell and Ellen B. Scouten, Special Deputy Attorneys General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant Danny Dean Frogge was indicted on 3 July 1995 for the first-degree murders of Robert Edward Frogge and Audrey Yvonne Frogge. He was tried capitally to a jury at the 28 August 1995 Criminal Session of Superior Court, Forsyth County. The jury found defendant guilty of both counts of first-degree murder on the basis of malice, premeditation, and deliberation and under the felony murder rule. After a capital sentencing proceeding, the jury recommended a sentence of life imprisonment as to the murder of Robert Frogge and a sentence of death as to the murder of Audrey Frogge. The trial court sentenced defendant accordingly.

The State's evidence tended to show *inter alia* that on 4 November 1994, defendant stabbed and killed his father, Robert Frogge, and his invalid stepmother, Audrey Frogge. After his arrest, defendant was incarcerated in the Forsyth County jail, where he met Gregory Tew, another jail inmate. Tew testified that about four months prior to trial, defendant approached Tew and asked Tew to pay him $5,000 in exchange for defendant's full story concerning the murders. Defendant told Tew, who was awaiting trial on rape charges, that Tew could help himself with authorities by recounting defend-

ant's story to them. Tew could not raise that amount. Defendant ulti-
mately reduced the demand by half, but Tew never paid him anything.

Tew also testified that about two months prior to trial, defendant
recounted the killings to Tew, and the recounting consisted of the fol-
lowing: Defendant, who lived with his father and stepmother in his
father's house, got home from work on 4 November 1995 and began
drinking. At some point between 8:00 and 9:00 p.m., his stepmother
and father told defendant to get out of the house since he was drink-
ing. Defendant refused, and an argument ensued between defendant
and his father in which his father struck him with a metal bar. The
blow left a bruise on defendant's side and arm where he blocked it.
Defendant then stabbed his father with a butcher knife he obtained
from the kitchen. Defendant did not indicate in what room of the
house the initial confrontation occurred, but said that it ended in the
bedroom, where he stabbed his father in the back as his stepmother
watched. From her bed, Audrey Frogge said, "Please don't kill me,"
and defendant stabbed her in the stomach. Defendant related that he
then changed his clothes; disposed of his bloody clothing and the
knife in the woods; and drove to a friend's house, where he drank and
partied. He returned to the house at around 4:00 or 4:30 a.m. and
called the police. Defendant then removed his father's wallet from the
back pocket of his father's pants, and, removing some money in order
to fake a robbery, defendant laid the wallet and its remaining con-
tents beside his father's body.

According to Tew's testimony, defendant also explained to Tew
that he had been drinking the night of the murders and that he had
problems with his father while defendant was growing up. When
asked on direct examination whether defendant stated why he
stabbed his stepmother, Tew stated that he did not. While Audrey
Frogge was hospitalized for diabetes, defendant told his father that it
would be a mess if she came back into the house. Defendant also told
Tew that he remembered stabbing her more times than he stabbed his
father. On cross-examination during trial, Tew testified that defend-
ant felt telling Tew the background surrounding the killings would
assist defendant in avoiding the death penalty and that Tew's testi-
mony at defendant's trial would assist Tew as well. Tew also testified
that no money ever changed hands.

In an assignment of error, defendant argues that the trial court
erred by admitting a noncorroborative and inadmissible prior state-
ment which Gregory Tew made to the Winston-Salem police.

STATE v. FROGGE

[345 N.C. 614 (1997)]

Defendant argues that Tew's unsworn statement was not admissible under the prior consistent statement exception to the hearsay rule because it contradicted Tew's trial testimony and contained information grossly prejudicial to defendant. Thus, defendant contends that he was prejudiced by the admission of conflicting evidence under the guise of corroboration and is entitled to a new trial. We agree.

The State called Gregory Tew to testify about statements defendant allegedly made to him while they were incarcerated together in the Forsyth County jail. Later, over defendant's objection, the State called Detective Dennis Scales to read aloud the contents of a statement Tew made to him on the day Tew entered into a plea agreement with the State regarding his statutory rape charge. The statement was offered for corroborative purposes and was received into evidence subject to the court's instruction that the jury not consider the statement as substantive evidence, but only in determining Tew's credibility.

Defendant points to three instances in which Tew's prior statement conflicts with his trial testimony. In the first instance, Tew testified that defendant stated that Robert Frogge, Audrey Frogge, and defendant were arguing when Robert struck defendant with a metal bar. Tew testified that defendant told him that after his father struck him, defendant got a knife from the kitchen and stabbed Robert and then Audrey. Yet in his statement to the police, Tew said that he did not remember whether defendant said he had the knife first or his dad had the bar first. Second, Tew testified that after the murders, defendant went to Kim Hairston's house and partied, after which he returned to the home around 4:30 a.m. According to Tew's testimony, after returning home, defendant removed money from his father's wallet in order to make it look like a robbery. Yet contrary to this testimony, Tew told the police that defendant got the wallet out of his father's pocket and removed money from it *prior* to driving to Kim Hairston's house. Finally, with regard to the killing of Audrey Frogge, Tew testified that defendant did not say why he stabbed his stepmother. Yet in his statement to police, Tew stated that defendant told him he hated his stepmother because she was always "bossing" him around and threatening to throw him out of the house.

Defendant argues that prior contradictory statements do not corroborate a witness' testimony and may not be admitted under such a theory. We agree. The official commentary to Rule 613 of the North Carolina Rules of Evidence states that "foundation requirements for admitting inconsistent statements will be governed by case law."

N.C.G.S. § 8C-1, Rule 613 official commentary (1992). We therefore look to our cases decided after the North Carolina Rules of Evidence were enacted as a guide to determine the propriety of admitting non-corroborative testimony. We have stated that a "witness's prior statements as to facts not referred to in his trial testimony *and not tending to add weight or credibility* to it are not admissible as corroborative evidence." *State v. Ramey*, 318 N.C. 457, 469, 349 S.E.2d 566, 574 (1986). Moreover, we also stated in *Ramey* that "the witness's prior contradictory statements may not be admitted under the guise of corroborating his testimony." *Id.* In the present case, we conclude that Tew's prior statement contained information manifestly contradictory to his testimony at trial and did not corroborate the testimony. Thus, we hold that it was error for the trial court to admit Tew's statement to the police for the purpose of corroborating Tew's testimony.

Defendant further contends that the inconsistencies between Tew's testimony and his statement to the police were manifestly prejudicial to defendant. We agree with this contention. Tew's testimony tended to show that before defendant stabbed his father, defendant's father had provoked him by hitting him with a metal bar. Based on this evidence, the jury could have found defendant guilty of a lesser charge than first-degree murder for stabbing his father. Tew's prior statement suggested that defendant started stabbing Robert Frogge before he was hit with the metal bar, thus weakening defendant's case for a lesser verdict. Further, as to when defendant took money from his father's wallet, the inconsistencies between Tew's prior statement and his trial testimony went to the heart of the prosecution's case for felony murder. Under the version of facts presented in Tew's testimony, a reasonable person could have concluded that there was no continuous transaction between the stabbings and the taking of the money and, thus, no felony murder. Finally, with regard to the killing of Audrey Frogge, Tew's testimony was that defendant gave no indication as to why he stabbed her. Yet Tew's prior statement, suggesting that defendant hated his stepmother, provided a motive and *mens rea* for first-degree murder. Because the evidence of this statement was hearsay inadmissible for the purposes of corroboration and because the trial court improperly admitted the statement under the guise of corroboration, we conclude that defendant was unfairly prejudiced in this case and is therefore entitled to a new trial.

NEW TRIAL.