STATE OF NORTH CAROLINA v. KENNETH WAYNE GOFORTH, DEFENDANT

No. COA04-608

(Filed 7 June 2005)

**1. Sexual Offenses— first-degree—instructions—anal intercourse—sufficiency of evidence**

There was sufficient evidence of anal intercourse with each of two children to support inclusion of anal intercourse in the enumerated acts in a first-degree sexual offense instruction and there was no plain error in the instruction.

**2. Evidence— sexual abuse—expert medical opinion—foundation in physical evidence**

Expert medical testimony that two children had been repeatedly abused sexually was properly admitted where there was a proper foundation of physical evidence consistent with sexual abuse.

## 3. Evidence— corroboration of child's statement—variation

A detective's testimony corroborating statements by a child who was the victim of sexual abuse was admissible, even though there was some variation from the child's statement.

Appeal by defendant from a judgment dated 26 August 2003 by Judge Susan C. Taylor in Cabarrus County Superior Court. Heard in the Court of Appeals 13 January 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*Office of the Public Defender, by Assistant Public Defender Julie Ramseur Lewis, for the defendant-appellant.*

BRYANT, Judge.

Kenneth Wayne Goforth (defendant) appeals from judgments entered consistent with guilty verdicts dated 26 August 2003 of ten counts of first-degree statutory sexual offense, four counts of first-degree statutory rape, and one count of taking indecent liberties with a child. Defendant was sentenced to a minimum of 240 months and a maximum of 297 months for six counts of first-degree sexual offense and three counts of first-degree rape. The remaining four counts of first-degree sexual offense, one count of first-degree rape, and one count of taking indecent liberties with a child were consolidated and the court imposed a sentence of 240 to 297 months to run consecutive to the first sentence.

The State's evidence tended to show the following: Defendant is the stepgrandfather of the two child victims in this case. B.F.[1], born 22 May 1990, was thirteen years old at the time of trial. From November 1997 until April 1998, when B.F. was seven years old, she lived at defendant's house with defendant, her mother, father and brother. B.F. slept in a room with a pantry, her parents slept in the bedroom, and defendant slept in the living room on the "couch bed." At times, B.F.'s parents left her and her brother alone with defendant. During these times, defendant would tell B.F.'s brother to go outside and would push him out and lock the door. When B.F. and defendant were alone, defendant would touch B.F. sexually.

After moving out in April 1998, B.F. and her family visited defendant on weekends and they often spent the night. When B.F. and her

---

1. Initials have been used throughout to protect the identity of the juveniles.

family visited defendant in June, July and August of 2001, defendant touched B.F. sexually. Defendant told her not to tell or she would get in trouble. However, B.F. eventually told her mother and Detective Chris Nesbitt of the Kannapolis Police Department about defendant's conduct after defendant's sexual abuse of T.B. was reported.

T.B., who is B.F.'s cousin, was born 26 December 1994 and was eight years old at the time of trial. From May 1998 until June 2000, T.B. and her mother lived with defendant. For those two years, T.B. and her mother slept in the bedroom, while defendant slept in the living room on the couch.

Defendant cared for T.B. frequently while her mother worked. While alone, defendant would touch T.B.'s "privates—in her bottom private, in her mouth and in her back private." Defendant touched T.B. in her bottom private with his "hot dog" and it hurt. At first, T.B. did not tell her mother because defendant threatened her and told her they would be in a whole lot of trouble. After T.B. and her mother moved out of defendant's home, T.B. told her mother, a police officer and a nurse about defendant's conduct.

On 13 August 2001, T.B. was interviewed by Nurse Julie Brafford. T.B., who referred to defendant as "papa", stated defendant put his privates in her privates and in her mouth and told T.B. not to tell anyone about these acts or they would get in trouble.

Approximately five weeks later, on 24 September 2001, B.F. was seen at the Children's Advocacy Center (CAC) at Northeast Medical Center by Nurse Brafford, Dr. Rosalina Conroy and Detective Nesbitt. Before being seated, B.F. said she was scared to tell them what "that guy" did. When Nurse Brafford asked her who the guy was, B.F. said "Kenneth Wayne Goforth." B.F. told Nurse Brafford defendant touched her and put his private in her private many times.

Defendant appeals.

———————————

Defendant raises three issues on appeal: whether the trial court erred in (I) instructing the jury on first-degree sexual offense with regard to anal intercourse as to B.F.; (II) allowing Dr. Conroy to testify to her medical conclusions that T.B. and B.F. had been "repeatedly sexually abused"; and (III) permitting Detective Nesbitt to testify regarding B.F.'s statements.

I

[1] Defendant first argues the trial court erred in its jury charge by including anal intercourse among the enumerated acts that could

support the charge of first-degree sexual offense because the evidence did not show anal intercourse had occurred with B.F., only with T.B.

Because defendant failed to object to the jury instructions at trial, the standard of review therefore is plain error. N.C. R. App. P. 10(b)(2); 10(c)(4). Under the plain error standard, defendant must show that the instructions were erroneous and that absent the erroneous instructions, a jury probably would have returned a different verdict. N.C. Gen. Stat. § 15A-1443(a) (2003); *State v. Lucas*, 353 N.C. 568, 584, 548 S.E.2d 712, 723 (2001) (citation omitted). The error in the instructions must be "so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." *Id.* (quoting *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993)). "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378 (1983) (citation and quotation omitted). In deciding whether a defect in the jury instruction constitutes "plain error," the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt. *Id.*

In the present case, defendant was charged with ten counts of first-degree sexual offense; six counts involving victim T.B. and four counts involving victim B.F. The crime of first-degree sexual offense is committed when a defendant engages in a sexual act with a child under the age of 13 years and the defendant is at least 12 years old and at least four years older than the victim. N.C. Gen. Stat. § 14-27.4(a) (2003). A "sexual act" is defined by statute as cunnilingus, fellatio, analingus, anal intercourse, or the penetration, however slight, by any object into the genital or anal opening of another person's body. N.C. Gen. Stat. § 14-27.1(4) (2003). The trial court instructed the jury in one charge as to all of the counts of sexual offense for which defendant was accused, as follows:

> The defendant has been charged with ten counts of first degree sexual offense. For you to find the defendant guilty in each of these offenses, the state must prove three things beyond a reasonable doubt, in each of these counts.

> First, that the defendant engaged in a sexual act with the victim. A sexual act means fellatio, which means any touching by lips or tongue of one person of the male sex organ of another, anal intercourse which is any penetration, however slight, of the anus of

any person by the male sexual organ of another; any penetration, however slight, by an object into the anal opening of a person's body; second, that at the time of the acts alleged, the victim was a child under the age of thirteen; third, that at the time of the alleged offense, the defendant was at least twelve years old and was four years older than the victim.

In considering each of those counts separately, if you find from the evidence, beyond a reasonable doubt, that on or about the alleged date the defendant engaged in a sexual act with a victim, and that, at the time, the victim was a child under the age of thirteen years old and was at least four years older than the victim, it would be your duty to return a verdict of guilty. If in considering each of these counts separately, if you do not so find, or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

After hearing the charge, the jury left the courtroom. The trial court asked the parties whether, before the jury began deliberations, they had any requests, corrections, or additions to the jury instructions given. Defendant did not object to the charge as given or propose additional instructions or suggest a different charge be given as to each victim involved. Defendant now complains, however, he was prejudiced by the trial court having included anal intercourse in the instruction. Defendant does not contend there was any lack of evidence defendant engaged in anal intercourse with T.B. At trial T.B. testified defendant had engaged in numerous acts of anal intercourse with her: defendant touched her in her bottom private with his hot dog and it hurt; defendant put his private in her back private in the living room; and defendant put his private in her back private a lot and in her mouth a lot.

As to B.F., there is evidence defendant committed acts of anal intercourse. Nurse Brafford testified that B.F. said defendant tried to put his "dick in her butt" and that "it didn't feel good whenever he tried to put it in her butt." Defendant refers to Brafford as a corroboration witness, and indeed she was. However, Brafford's testimony was admissible as corroborative and substantive evidence because defendant did not object to her testimony or request a limiting instruction. *See State v. Ford*, 136 N.C. App. 634, 640, 525 S.E.2d 218, 222 (2000) (citing *State v. Goodson*, 273 N.C. 128, 129, 159 S.E.2d 310, 311 (1968)) (if offering party does not designate purpose for which evidence is offered, evidence is admissible as either corroborative evidence or competent substantive evidence; trial court not required

to provide limiting instruction unless requested by party objecting to use of evidence as substantive). "The admission of evidence, competent for a restricted purpose, will not be held error in the absence of a request by defendant for a limiting instruction." *State v. Jones*, 322 N.C. 406, 414, 368 S.E.2d 844, 848 (1988). Such an instruction is not required to be given unless specifically requested by counsel. *State v. Smith*, 315 N.C. 76, 82, 337 S.E.2d 833, 838 (1985).

In the instant case there was significant evidence of repeated acts of sexual touching, including anal intercourse, by defendant as to B.F. and T.B., therefore, the trial court properly included anal intercourse among the enumerated acts that would support a finding of first-degree sexual offense. This assignment of error is overruled.

II

**[2]** Defendant next argues the trial court erred in allowing Dr. Conroy to testify to her medical conclusions that T.B. and B.F. had been "repeatedly sexually abused."

Defendant neither objected to nor moved to strike this testimony. The standard of review therefore is plain error. N.C. R. App. P. 10(b)(2); 10(c)(4); *see State v. Walker*, 316 N.C. 33, 38-39, 340 S.E.2d 80, 83 (1986) (citation omitted); *State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 806-07 (1983).

Dr. Conroy was admitted as an expert in the fields of pediatrics and child abuse and allowed to testify pursuant to Rule 702. N.C. Gen. Stat. § 8C-1, Rule 702 (2003) ("[A] witness qualified as an expert . . . may testify thereto in the form of an opinion.")

It is well settled that "[a]n expert medical witness may render an opinion pursuant to Rule 702 that sexual abuse has in fact occurred if the State establishes a proper foundation, i.e., physical evidence consistent with sexual abuse." *State v. Dixon*, 150 N.C. App. 46, 52, 563 S.E.2d 594, 598 (2002) (citation omitted). *See also State v. Dick*, 126 N.C. App. 312, 315, 485 S.E.2d 88, 90 (distinguishing the facts of that case, where there was physical evidence of the abuse, from those cases where there was no physical evidence, as in *State v. Trent*, 320 N.C. 610, 359 S.E.2d 463 (1987), and *State v. Parker*, 111 N.C. App. 359, 432 S.E.2d 705 (1993), in finding the rendering of the doctor's opinion to be without error).

In the present case, there was physical evidence of abuse; the hymenal tissues of B.F. and T.B. reflected penetrating trauma.

Defendant, however, cites extensive caselaw in which there was no such physical evidence of sexual abuse, and which states where there is no physical evidence to support a diagnosis of sexual abuse, the trial court should not admit expert opinion that sexual abuse has in fact occurred because such testimony amounts to an impermissible opinion regarding the victim's credibility. *See State v. Stancil*, 355 N.C. 266, 267, 559 S.E.2d 788, 789; *see also Trent* at 614-15, 359 S.E.2d at 465-66; *State v. Couser*, 163 N.C. App. 727, 730, 594 S.E.2d 420, 422 (2004); *State v. Grover*, 142 N.C. App. 411, 543 S.E.2d 179 (2001). These cases are clearly distinguished from the present case, where there was strong physical evidence of abuse.

Generally, Dr. Conroy testified that when penetration is alleged, the findings could be anything from absolutely nothing to scar tissue. Probably less than 5% of the children that Dr. Conroy examines who allege abuse will have physical findings because children are groomed and learn very quickly that if something hurts to relax. Dr. Conroy testified that if there are physical findings, this is usually indicative of repeated abuse.

During T.B.'s examination on 13 August 2001, there were physical findings of sexual abuse. Pictures of T.B.'s vagina were taken with the culposcope, revealing the vascularity reflected in the color of the hymen. Dr. Conroy testified during a genital exam of a young girl, they look at the hymenal ring, which if normal is supposed to be a uniform thickness all the way around with no indentations; the edge should be smooth. If there has been trauma to the hymen, scar tissue may form at the location where the hymen has been split and comes back together. The normal hymen also has very pink color but when a scar is present, there is a loss of blood vessels in the area of the scar. Dr. Conroy concluded T.B. was sexually abused because her hymen had a relatively smooth edge except for two notches around an area of pallor, visibly pink, then pale, then pink. This color variance indicated there had been trauma to the hymen, it had healed and a loss of vascularity existed in that area in between the notches. Based on her experience and training, Dr. Conroy's observations of T.B.'s vagina indicated this loss of vascularity would be caused by an intentional, penetrating vaginal trauma. After discussing T.B.'s medical history and conducting the physical examination, Dr. Conroy reached a medical conclusion that T.B. had been repeatedly sexually abused.

In B.F.'s case, Dr. Conroy learned from Nurse Brafford of B.F.'s alleged penetration by a male private part into her private part. Dr.

Conroy physically examined B.F. on 24 September 2001, after having reviewed a February 1998[2] culposcope photograph of B.F.'s hymen, which showed an area of pallor on the hymen suspicious for sexual abuse. Based upon Dr. Conroy's training and experience, she testified the cause of such irregularity would be sexual abuse, penetrating trauma, not accidental. In comparison, the 2001 photographs of B.F.'s hymen show physical evidence of sexual abuse—loss of vascularity, linear pallor that is in the same position as the earlier photographs, only more advanced and more extensive than in the 1998 photograph. After physically examining B.F., discussing her medical history and looking at her culposcope photographs, Dr. Conroy reached a medical conclusion that B.F. also had been repeatedly sexually abused.

As we said in *Dixon*, where there is a proper foundation showing physical evidence consistent with sexual abuse, an expert medical witness may properly render an opinion pursuant to Rule 702 that sexual abuse has in fact occurred. *Dixon* at 52, 563 S.E.2d at 598. Here, there was a sufficient foundation of physical evidence of abuse for Dr. Conroy to properly render her expert opinion that both child victims had been repeatedly sexually abused. Dr. Conroy's testimony was properly admitted. This assignment of error is overruled.

### III

**[3]** Defendant contends the trial court erred in permitting Detective Nesbitt to testify regarding statements made by B.F.

"Where testimony which is offered to corroborate the testimony of another witness does so substantially, it is not rendered incompetent by the fact that there is some variation." *State v. Rogers*, 299 N.C. 597, 601, 264 S.E.2d 89, 92 (1980). " 'Such variations affect only the weight of the evidence which is for the jury to determine.' " *State v. Benson*, 331 N.C. 537, 552, 417 S.E.2d 756, 765 (1992) (quotation omitted). "Prior consistent statements are admissible even though they contain new or additional information so long as the narration of events is substantially similar to the witness' in-court testimony." *State v. Williamson*, 333 N.C. 128, 136, 423 S.E.2d 766, 770 (1992). "The admission of evidence which is competent for a restricted purpose will not be held error in the absence of a request by the defendant for limiting instructions." *State v. Jones*, 322 N.C. 406, 414, 368 S.E.2d 844, 848 (1988). "However, the witness's prior contradictory statements may not be admitted under the guise of corroborating his

---

2. B.F. was examined at the CAC in 1998, however there are no additional facts in the record regarding B.F.'s visit to the center prior to 2001.

testimony." *State v. Ramey*, 318 N.C. 457, 469, 349 S.E.2d 566, 574 (1986); *State v. Frogge*, 345 N.C. 614, 618, 481 S.E.2d 278, 280 (1997) (error to admit statement of witness where prior statement contained information "manifestly contradictory" to his testimony at trial and did not corroborate the testimony).

At trial B.F. responded "no" to the question of whether she had spent the night at defendant's house in June and August 2001. Defendant maintains B.F.'s statement, as rendered by Detective Nesbitt at trial, was "fatally contradictory":

The weekend before my paw-paw got arrested, me, [my brother], mom and dad were at my paw-paw's. I don't remember if it was a Saturday or Sunday, but it was in the morning time.

I came out of the bathroom and paw-paw stopped me in the hallway to keep me from going back to the bedroom that I fell asleep in—or that I sleep in. He grabbed my right hand and put it on his privates. He had on skimpy shorts and no shirt. He pulled his shorts down until his privates hung out. He put his privates in my mouth for about five minutes. Paw-paw said, oops, and white stuff came out of his privates. He heard a door open and he pulled his shorts back up.

Later that same night, I was asleep in my bed—or in bed and I woke up. Paw-paw had his hands at my privates and he licked my privates. I had on my panties, but he moved them to the side. I told him to stop and he left the room. He came back into my room later while I was still asleep and put his privates in my privates. I told him to stop and he did.

Without having objected at trial, defendant argues admitting B.F.'s statement to Detective Nesbitt was plain error because the statement was inadmissible hearsay and failed to corroborate her response at trial. We reject defendant's portrayal of B.F.'s prior statement to Detective Nesbitt as fatally contradictory to her single response at trial. In addition to Detective Nesbitt's statement, B.F. and her mother also testified after the family moved out, they would visit defendant on weekends and spend the night. B.F. and her mother testified the family did spend nights with defendant when they went to his house for cookouts. B.F.'s statement to Detective Nesbitt was not "manifestly contradictory" but rather a slight variation from B.F.'s response at trial to whether she had spent the night at defendant's in 2001. B.F.'s statement to Detective Nesbitt was competent, corroborative

testimony and the trial court did not err in admitting the detective's testimony. This assignment of error is overruled.

No error.

Judges HUNTER and JACKSON concur.