NO. COA14-244

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

STATE OF NORTH CAROLINA

v.                                    Scotland County
                                      No. 12 CRS 50906
SHAWN MOORE,
     Defendant.


Appeal by defendant from judgment entered 31 October 2013 by Judge Richard Brown in Scotland County Superior Court. Heard in the Court of Appeals 26 August 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Jill F. Cramer, for the State.*
>
> *Parish & Cooke, by James R. Parish, for defendant-appellant.*


BRYANT, Judge.


Where the prior statement of a witness did not differ significantly from the witness' trial testimony, the trial court did not abuse its discretion in admitting the statement for corroborative purposes.

On 24 June 2013, defendant Shawn Moore was indicted by a Scotland County grand jury for robbery with a dangerous weapon. The matter came on for trial during the 28 October 2013 criminal

session of Scotland County Superior Court, the Honorable Richard Brown, Judge presiding. At trial, the State's evidence tended to show the following.

On 15 March 2012, Sergeant Jeffrey Cooke of the Scotland County Sheriff's Office responded to an emergency call. When Sergeant Cooke arrived at the scene, he found Travis McLean lying on the ground bleeding from a foot injury. McLean told Sergeant Cooke that three men came to his house to look at some electronic equipment. The men then grabbed McLean's shotgun and shot McLean in the foot before taking McLean's cell phone and fleeing in McLean's car, a lavender-colored 1994 Cadillac Fleetwood Brougham. McLean's car was later found abandoned and seriously damaged in Marlboro, South Carolina.

At trial, McLean testified that he knew one of the three men who robbed him because his cousin once introduced the two men. This man, defendant, was known to McLean as "Mook" or "Mooky." McLean stated that defendant and two other men, later identified as Michael Liles and Ari Miles, came to McLean's house to buy a half pound of marijuana. McLean testified that because he did not have enough marijuana to sell, he texted his supplier "Scottie" to bring additional marijuana to his house.

While the men waited for the marijuana, defendant noticed McLean's shotgun in the corner of the living room and asked if he could buy it.  After McLean declined to sell the shotgun, defendant then asked if he could shoot it; McLean said yes. After defendant fired the shotgun outside in the backyard, defendant asked McLean to show him McLean's car's electronics. McLean went to his car and turned it on to run the audio system.

After McLean turned on his car's audio system, he stated that he received a phone call and began to walk back towards his house. McLean testified that as he walked back towards his house, Ari Miles suddenly stepped in front of him, pointed the shotgun at him, and demanded McLean give Miles his cell phone. Miles then fired the shotgun towards McLean's feet.  McLean threw his cell phone at Miles and began to run away but realized that he had been shot in the left foot and ankle and was unable to run.  McLean testified that immediately after the shooting, defendant got into McLean's car and drove away.  Liles and Miles both left in Liles' car.  McLean stated that the shotgun damage to his foot was so severe his Achilles tendon had to be removed.

The State also presented the testimony of Ari Miles at trial.  Miles was currently being held at the Scotland County Correctional facility following his conviction for the armed

robbery of McLean. Miles testified that he went with defendant and Liles to McLean's house to purchase marijuana and that while McLean was trying to find more marijuana for them, defendant told Miles he wanted to steal McLean's car. Miles said defendant threatened him by flashing a gun tucked into his waistband and ordered Miles to use McLean's shotgun for the robbery. Miles testified that he did not want to hurt McLean and that he thought he had only shot at the ground, rather than hitting McLean's left foot and ankle. Miles said that after the robbery, he traded McLean's cell phone to another person for a different cell phone.

On 29 October 2013, defendant filed a motion *in limine* to exclude/redact statements or exhibits. During the pre-trial hearing, the trial court heard arguments from counsel regarding two of the State's exhibits: a statement made by Ari Miles on 28 March 2012; and a statement by Ari Miles made 9 October 2013. The trial court denied defendant's motion on grounds that the two statements were not significantly different but noted that if Miles testified at trial and his testimony changed significantly from the prior statements, the trial court would reconsider its decision.

Ari Miles testified during trial as to his involvement with defendant and the robbery of McLean. Defendant then objected during the testimony of Investigator Laviner when Miles' 28 March 2012 statement was read aloud to the jury. The trial court, after reconsidering the arguments of counsel and the statement in question, overruled defendant's objection and allowed the statement to be admitted for corroborative purposes. The trial court also gave limiting instructions to the jury regarding their consideration of Miles' prior statement.

On 31 October, a jury convicted defendant of robbery with a dangerous weapon. Defendant was found to be a prior record level II and was sentenced to 59 to 83 months imprisonment. Defendant appeals.

_____

In his sole issue on appeal, defendant argues that the trial court erred in allowing Ari Miles' 28 March 2012 statement to be admitted for corroborative purposes, and that defendant was prejudiced as a result. We disagree.

"The standard of review for this Court assessing evidentiary rulings is abuse of discretion. A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the

result of a reasoned decision." *State v. Cook*, 193 N.C. App. 179, 181, 666 S.E.2d 795, 797 (2008) (citation and quotation omitted). "The abuse of discretion standard applies to decisions by a trial court that a statement is admissible for corroboration." *State v. Tellez*, 200 N.C. App. 517, 526, 684 S.E.2d 733, 739 (2009) (citations omitted).

Defendant contends the trial court erred in admitting Miles' 28 March 2012 statement into evidence because the statement contained significant differences from Miles' own testimony during trial and these differences resulted in prejudicial error entitling defendant to a new trial.

> [C]orroborative testimony is testimony which tends to strengthen, confirm, or make more certain the testimony of another witness. In order to be admissible as corroborative evidence, a witness'[] prior consistent statements merely must tend to add weight or credibility to the witness's testimony. Further, it is well established that such corroborative evidence may contain new or additional facts when it tends to strengthen and add credibility to the testimony which it corroborates. If the previous statements are generally consistent with the witness' testimony, slight variations will not render the statements inadmissible, but such variations . . . affect [only] the credibility of the statement. A trial court has wide latitude in deciding when a prior consistent statement can be admitted for corroborative, non[-]hearsay purposes.

*Id.* at 526—27, 684 S.E.2d at 740 (citations omitted). "The trial court is [ultimately] in the best position to determine whether the testimony of [one witness as to a prior statement of another witness] corroborate[s] the testimony of [the latter]." *State v. Bell*, 159 N.C. App. 151, 156, 584 S.E.2d 298, 302 (2003) (citation omitted). "Only if the prior statement contradicts the trial testimony should the prior statement be excluded." *Tellez*, 200 N.C. App. at 527, 684 S.E.2d at 740 (citation omitted).

Ari Miles testified at trial that he went with Michael Liles and defendant to McLean's house to purchase marijuana. Miles stated that defendant became interested in McLean's shotgun and that after discussing the marijuana purchase with him and Liles, told Miles "he was going to give me the shotgun for me to stick [McLean] up." Miles said defendant then began to ask McLean questions about McLean's car, and McLean turned the car and its audio system on. Miles stated that once McLean began to walk away from the car, defendant signaled for Miles to rob McLean. After Miles fired the shot gun at McLean, McLean "threw his cell phone and ran" while defendant got into McLean's car. Miles stated that defendant threatened him by flashing a gun tucked into defendant's waistband before driving away.

Miles further said that he gave the shotgun to Liles and fled in Liles' car, and traded McLean's cell phone to another person for a different type of cell phone.

During his testimony, Investigator Laviner read a statement made by Ari Miles on 28 March 2012. In his statement, Miles described his trip with Liles and defendant to McLean's house to purchase marijuana, defendant's interest in McLean's shotgun, and defendant asking McLean to show him the audio system in McLean's car. Miles said in his statement that defendant said he wanted to rob McLean and that if Miles did not shoot McLean, defendant "would do [Miles.]" In his statement, Miles further said that he shot at the ground and McLean threw his cell phone at him in response; Miles then ran back to Liles' car and left. Defendant was described as taking the shotgun and driving the car down to the sand hills.

Defendant's contention that there were significant differences between Miles' testimony and prior statement is without merit. In reviewing Miles' testimony and prior statement, the differences between the two are slight. Moreover, both substantiate defendant's participation in McLean's robbery, including defendant's decision to rob McLean for McLean's car, defendant getting Miles to use the shotgun as

part of the robbery by threatening Miles, and defendant leaving the scene in McLean's car. As such, the trial court did not abuse its discretion in allowing Miles' prior statement to be admitted, as the differences between Miles' testimony and prior statement were slight and did not change Miles' account of McLean's robbery. *See State v. Lloyd*, 354 N.C. 76, 104, 552 S.E.2d 596, 617 (2001) ("[P]rior consistent statements are admissible even though they contain new or additional information so long as the narration of events is substantially similar to the witness' in-court testimony." (citation omitted)).

Defendant further contends the trial court erred in its admission of Miles' prior statement as corroborative evidence based on our Supreme Court's decisions in three cases: *State v. Frogge*, 345 N.C. 614, 481 S.E.2d 278 (1997); *State v. Warren*, 289 N.C. 551, 223 S.E.2d 317 (1976); and *State v. Fowler*, 270 N.C. 468, 155 S.E.2d 83 (1967). However, these cases are not applicable to the instant case.

In *Frogge*, *Warren*, and *Fowler*, the defendants were convicted of first-degree murder. On appeal, the defendants challenged the trial court's admission of prior statements of witnesses as corroborative evidence, arguing that the prior

statements were so substantially different from testimony given during the trial that the defendants were prejudiced as a result. Our Supreme Court agreed, finding that in each case the prior statements were contradictory to testimony given during the trial and, because the evidence directly affected the first-degree murder charges facing the defendants, the admission of such evidence was indeed prejudicial. *See Frogge*, 345 N.C. at 616—18, 481 S.E.2d at 279—80 (ordering a new trial for the defendant on grounds of prejudice caused by the improper admission of corroborative evidence where "the inconsistencies between [defendant's] prior statement and his trial testimony went to the heart of the prosecution's case for felony murder[]"); *Warren*, 289 N.C. at 553—59, 223 S.E.2d at 319—22 (holding that corroborative evidence was prejudicial to the defendant where the testimony "went beyond and contradicted" other testimony that was essential to the defendant's charged offense of first-degree murder); *Fowler*, 270 N.C. at 469—72, 155 S.E.2d at 84—87 (ordering a new trial where the differences in the corroborative testimony could account for the difference between the defendant receiving life imprisonment and the death penalty).

Here, defendant was charged with the offense of robbery with a dangerous weapon. As previously discussed, there were only slight differences between Ari Miles' testimony and his prior statement. Further, Miles' testimony and prior statement were substantially consistent regarding defendant's involvement in McLean's robbery including events leading up to, during, and immediately after the robbery. Any "inconsistencies between [Miles'] prior statement and his trial testimony [did not go] to the heart of the prosecution's case for [robbery with a dangerous weapon]." *See Frogge*, 345 N.C. at 616—18, 481 S.E.2d at 279—80.

Defendant also argues that the trial court erred by admitting as corroborative evidence Miles' testimony and prior statement because Miles' prior statement "introduced a murderous intent on the part of the defendant" and "this inadmissible and highly prejudicial testimony resulted in prejudicial error entitling the defendant to a new trial." We disagree for, as discussed above, the differences that existed between Miles' testimony at trial and his prior consistent statement made within days of the robbery were only slight and did not go to the heart of defendant's charged offense of robbery with a dangerous weapon. Defendant is unable to demonstrate prejudice

from the admission of Miles' prior statement. *See State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987) ("The burden is on the party who asserts that evidence was improperly admitted to show both error and that he was prejudiced by its admission. The admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded." (citations omitted)). We further note that the evidence presented against defendant, particularly the testimony of McLean, was overwhelming such that the differences in Miles' testimony and prior statement would not affect the outcome of defendant's trial. *See State v. Moses*, 52 N.C. App. 412, 421—24, 279 S.E.2d 59, 65—66 (1981) (holding that the trial court did not abuse its discretion in admitting evidence of corroborative statements where there were no fundamental differences between the statements, nor did the defendant receive an unfair trial where the defendant presented no evidence and the State's evidence against the defendant was overwhelming). Accordingly, the trial court did not abuse its discretion in admitting Miles' prior statement for corroborative purposes, where the statement tended to add weight and credibility to Miles' testimony at trial.

No error.

Chief Judge McGEE and Judge STROUD concur.