IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1138

Filed: 7 July 2020

Davidson County, No. 18CRS052224, 18CRS052222, 18CRS002479

STATE OF NORTH CAROLINA

v.

DEONTRAE YOUNG-KIRKPATRICK, Defendant.

Appeal by Defendant from judgments entered 2 April 2019 by Judge Joseph N. Crosswhite in Davidson County Superior Court. Heard in the Court of Appeals 10 June 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Kelly A. Moore, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Andrew J. DeSimone, for Defendant.*

BROOK, Judge.

Deontrae Young-Kirkpatrick ("Defendant") appeals from judgment entered upon jury verdicts for common law robbery and habitual misdemeanor assault and judgment entered upon plea of guilty for attaining the status of habitual felon. On appeal, Defendant argues that the trial court erred in denying his motion to dismiss the common law robbery charge. Defendant further argues that the trial court erred in admitting Rule 404(b) evidence and that the admission of such evidence was

prejudicial.  Finally, Defendant argues that the trial court erred in entering a civil judgment for attorney's fees against him.

For the following reasons, we hold that Defendant has failed to demonstrate error in regard to the first two issues; however, we agree that the trial court erred in ordering Defendant to pay attorney's fees.

## I. Factual and Procedural Background

After spending the evening at her friend's house on 22 April 2018, Paige Lineberry pulled into her driveway in her new car.  Though Defendant, her then-boyfriend, had purchased the car for her two days prior, Ms. Lineberry testified that her father had paid him back either that same day or the next with her tax return money.

Defendant was waiting for Ms. Lineberry in his car parked in her driveway. Ms. Lineberry testified at trial that she got out of her car and into Defendant's car, and the two started talking.  After about 30 minutes, they got into an argument when Defendant called Ms. Lineberry "an ass kisser" and "said [her] parents control [her]." Ms. Lineberry testified that she got back into her car, and Defendant moved his car directly behind hers.  She backed her car into Defendant's car but did not cause any damage to his car; however, Defendant "jumped out of his car[,]" approached Ms. Lineberry's driver's side window, and began yelling at her.  She testified that Defendant told her she was going to have to "fix his mama's car."

Defendant told Ms. Lineberry to get out of the car, but she refused. Ms. Lineberry testified that Defendant proceeded to hit her windows with his fists, then with a tire iron, and finally with a piece of slate that was sitting on the driveway. While Defendant was trying to break into her car, Ms. Lineberry testified that she honked her horn and called her brother, who was inside the house, to try and get his attention. Jade Lineberry, Ms. Lineberry's brother, testified that he answered the phone and then called 911. Defendant eventually broke through one of the car's windows and grabbed Ms. Lineberry by the throat. Ms. Lineberry testified that she felt like she was going to die while he was squeezing her throat.

As Defendant was grabbing her throat, he opened her car door with his other hand and pulled Ms. Lineberry out of the car. She was able to get away from Defendant and ran to her front porch where he cornered her for about 10 minutes. Mr. Lineberry testified that at this point he opened his front door and saw Defendant blocking Ms. Lineberry's path and yelling at her. He put his hand on Defendant's shoulder to "calm the situation[,]" and Ms. Lineberry ran into the house. Defendant "tried to force his way" into the house "for a brief minute[,]" but then followed Mr. Lineberry away from the porch and down to the driveway.

Mr. Lineberry testified that Defendant repeatedly told him that Ms. Lineberry "was the problem and he needed his money." Defendant then went to Ms. Lineberry's car and took out her keys and car title, saying "something to the effect of, 'This is

mine,' or 'She don't deserve this. This is mine.'" Officer Adam Gleave, who responded to the scene about 20 minutes after Mr. Lineberry called the police, testified that he found the keys and car title either on top of Defendant's car or in his driver's seat. Officer Gleave also testified that Defendant told him he had taken the keys and the title.

Ms. Lineberry also testified that Defendant provided her with heroin during the course of their relationship.

After a trial running from 1 to 2 April 2019 before Judge Crosswhite, the jury returned verdicts of guilty for habitual misdemeanor assault and common law robbery. Defendant then pleaded guilty to attaining habitual felon status. The trial court consolidated the convictions and sentenced Defendant to 110 to 144 months' active imprisonment. In an undated order, the trial court also entered a civil judgment for attorney's fees against Defendant in the amount of $5,640.50.

Defendant gave oral notice of appeal following entry of the criminal judgment.

## II. Analysis

On appeal, Defendant argues that the trial court erred in denying Defendant's motion to dismiss the robbery charge because there was insufficient evidence that Defendant used violence or intimidation to take the property or that he took property from Ms. Lineberry's presence. Defendant further argues that the trial court erred in admitting evidence that Defendant provided heroin to Ms. Lineberry and that the

error was prejudicial.  Finally, Defendant argues that the trial court erred by ordering Defendant to pay attorney's fees without notice and opportunity to be heard.

We consider each argument in turn.

### A. Motion to Dismiss for Insufficiency of the Evidence

Defendant first argues that the trial court erred in denying his motion to dismiss the charge of common law robbery because the State failed to prove that he (1) used force or intimidation to take property and (2) took property from Ms. Lineberry's person or presence.  For the following reasons, we hold that the trial court did not err.

### i. Standard of Review

We review the denial of a motion to dismiss de novo.  *State v. Robledo*, 193 N.C. App. 521, 525, 668 S.E.2d 91, 94 (2008).  "Under a de novo review, th[is C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."  *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal marks and citation omitted).

### ii. Merits

> When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense.  If so, the motion to dismiss is properly denied.

*State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651-52 (1982). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 66, 296 S.E.2d at 652 (internal marks and citation omitted). "In deciding a motion to dismiss, the evidence should be viewed in the light most favorable to the State[,]" *State v. Mucci*, 163 N.C. App. 615, 618, 594 S.E.2d 411, 414 (2004), "giving the State the benefit of every reasonable inference to be drawn therefrom[,]" *State v. Bates*, 70 N.C. App. 477, 479, 319 S.E.2d 683, 684 (1984).

Common law robbery under N.C. Gen. Stat. § 14-87.1 (2019) is the "felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Porter*, 198 N.C. App. 183, 186, 679 S.E.2d 167, 169 (2009) (citation omitted). In assessing whether the State has established the requisite connection between the taking and the force employed, our Supreme Court has held that "it makes no difference whether the intent to steal was formulated before the use of force or after it, so long as the theft and the use or threat of force can be perceived by the jury as constituting a single transaction." *State v. Fields*, 315 N.C. 191, 203, 337 S.E.2d 518, 525 (1985); *see also State v. Rasor*, 319 N.C. 577, 587, 356 S.E.2d 328, 335 (1987) (holding whether defendant formulated intent to take wallet before or after use of force immaterial to armed robbery charge so long as taking and force were a part of a continuous transaction). Furthermore, "[t]he exact time relationship . . . between the violence and the actual taking is unimportant

as long as there is one continuing transaction." *State v. Bellamy*, 159 N.C. App. 143, 149, 582 S.E.2d 663, 668 (2003) (internal marks and citation omitted); *see also Porter*, 198 N.C. App. at 187-88, 679 S.E.2d at 170 (applying continuous transaction doctrine to common law robbery charge).

Accordingly, even when there is some attenuation between the use of force and the taking, the action can still amount to a continuous transaction. In *State v. Reaves*, this Court found no merit in the defendant's argument that his use of force and subsequent taking of a patrolman's revolver and patrol car were not joined in time because he only formed the intent to take them after he had scuffled with the officer and then tried to escape in his own automobile and found it locked. 9 N.C. App. 315, 317, 176 S.E.2d 13, 15 (1970). Relatedly, in *Bellamy*, the defendant stole videos from a video store and fled with a store employee in pursuit. 159 N.C. App. at 145, 582 S.E.2d at 665-66. Given that "[t]he chase ended only about twenty feet from the video store[,] at no time did the chase cease or Edison lose sight of defendant[,] and defendant did not make good his escape until after threatening Edison with the knife[,]" we held that "the taking and threatened use of force was so joined by time and circumstances so as to constitute a single transaction." *Id.* at 149, 582 S.E.2d at 668; *but see State v. Frogge*, 345 N.C. 614, 618, 481 S.E.2d 278, 280 (1997) (holding "a reasonable person could have concluded that there was no continuous transaction"

in felony murder case where defendant perpetrated violent act, left the premises, and returned to take property hours later).

Building on the above case law,

> if the force or intimidation by the use of firearms for the purpose of taking personal property has been used and caused the victim in possession or control to flee the premises and this is followed by the taking of the property in one continuous course of conduct, the taking is from the "presence" of the victim.

*State v. Tuck*, 173 N.C. App. 61, 67, 618 S.E.2d 265, 270 (2005) (internal marks and citation omitted). In *Tuck*, a case concerning robbery with a dangerous weapon that is nonetheless instructive, this Court held that the "presence" element was satisfied where the shopkeeper fled her store "after [the] defendant approached her with a handgun[,]" and then the defendant robbed the store. *Id.* at 68, 618 S.E.2d at 270-71; *see also State v. Herring*, 74 N.C. App. 269, 271, 328 S.E.2d 23, 25 (1985) (holding taking was "from the 'presence' of the victim" where defendant fired a gun into a car to prompt the victim to flee and then stole items from the car).

Viewing the evidence in the light most favorable to the State, Defendant's assault on Ms. Lineberry and his taking of her property constituted a single transaction. There was substantial evidence that the assault, intimidation, and taking all related to the car Defendant purchased for Ms. Lineberry. More particularly, the evidence permitted the reasonable inference that the clash over the car informed Defendant's argument with and assault on Ms. Lineberry and, in turn,

her flight into her parents' house. This argument was front and center in Defendant's conversation with Mr. Lineberry and motivated Defendant's removal of Ms. Lineberry's keys, car title, and wallet from the car. And all of the above occurred in an uninterrupted, 20-minute window. Finally, Defendant remained physically present in the same general location the entire time, moving only between the driveway and the front porch.

Relatedly, these facts analogize to cases where our Court has found a taking from the victim's presence. Here, as in *Tuck* and *Herring*, it was Defendant's use of force that caused Ms. Lineberry to flee, leaving her property behind for Defendant to take. Ms. Lineberry was in her car with the keys in the ignition and the engine on when Defendant parked behind her, and then began breaking into her car using a rock, his fist, and a tire iron. After cutting off her escape route, he dragged her from the car, forcing her to abandon her keys in the ignition as well as her wallet and the vehicle title on the passenger's seat. Had he not pulled her from the car and assaulted her, causing her to flee for the house, the taking of her keys, wallet, and title would not have been possible.

Defendant relies on *State v. Barnes*, 345 N.C. 146, 149, 478 S.E.2d 188, 190 (1996), to assert that when property is some distance away from the victim the "presence" requirement is not met; however, *Barnes* is legally and factually distinguishable. First, *Barnes* concerned the crime of larceny, not robbery, and

larceny "is afforded special consideration [ ] to protect the person or immediate presence of the victim from invasion." 345 N.C. at 150, 478 S.E.2d at 191 (quoting 50 Am. Jur. 2d *Larceny* § 54 (1995)). In contrast, as discussed above, the robbery case law focuses more broadly on the connection between the violence or intimidation and the taking as opposed to more narrowly on whether a physical invasion occurred. Second, in *Barnes* the victim left willingly and then returned when she suspected theft. *Id.* Here, Ms. Lineberry was forced to flee, and that flight facilitated the robbery.

Viewing the evidence in the light most favorable to it, the State presented substantial evidence that Defendant's assault and taking were part of a continuous transaction. We therefore hold that the trial court did not err in denying Defendant's motion to dismiss the charge of common law robbery.

## B. 404(b) Evidence

Defendant next argues that the trial court erred in admitting evidence that Defendant supplied Ms. Lineberry with heroin. We hold that any error, if present, was not prejudicial.

### i. Standard of Review

In reviewing the admission of evidence of other crimes, wrongs, or acts of a criminal defendant, we engage in a "three-pronged analysis." *State v. Adams*, 220 N.C. App. 319, 323, 727 S.E.2d 577, 580-81 (2012). "[W]e first determine whether the

evidence was offered for a proper purpose under Rule 404(b), then determine whether the evidence is relevant under Rule 401, and finally determine whether the trial court abused its discretion in balancing the probative value of the evidence under Rule 403." *Id.* (internal marks and citation omitted).

"The standard of review applied to the first two prongs of our analysis is de novo[.]" *Id.* at 323, 727 S.E.2d at 581. "Under a de novo review, th[is C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Williams*, 362 N.C. at 632-33, 669 S.E.2d at 294 (citation and internal marks omitted). "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Ward*, 354 N.C. 231, 264, 555 S.E.2d 251, 272 (2001) (citation omitted).

## ii. Merits

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2019). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* § 8C-1, Rule 401. "Although relevant, evidence may be excluded if its probative

value is substantially outweighed by the danger of unfair prejudice[.]" *Id.* § 8C-1,

Rule 403. However,

> [e]ven where evidence is erroneously admitted because it is
> irrelevant or prejudicial, the defendant has the burden of
> showing that the error was not harmless, that "there [was]
> a reasonable possibility that, had the error in question not
> been committed, a different result would have been
> reached at the trial[.]"

*State v. Hyman*, 153 N.C. App. 396, 402, 570 S.E.2d 745, 749 (2002) (quoting N.C.

Gen. Stat. § 15A-1443(a) (2002)).

Here, the State presented evidence that Defendant provided Ms. Lineberry

with heroin during the course of their relationship. Defendant argues that this

evidence was inadmissible because the drug activity was unrelated to the charges he

faced. Defendant further argues that the admission of this evidence was particularly

prejudicial because Defendant is an African-American male, and this evidence

"heightened the risk of implicit racial bias against him."

Assuming without deciding that the trial court erred in admitting this

testimony, we cannot say there is a reasonable possibility that, had the trial court not

admitted this evidence, a different result would have been reached at trial. *See* N.C.

Gen. Stat. § 15A-1443(a) (2019). The unobjected-to evidence showed that Defendant

forced Ms. Lineberry out of her car after punching through her car window. The

evidence further showed that he grabbed her by the throat, and, after Ms. Lineberry

ran into her house, Defendant took her keys and car title and moved them to his car.

Finally, Officer Gleave testified that he found Ms. Lineberry's property on or in Defendant's car and that Defendant admitted to taking these items.

Given the overwhelming evidence of Defendant's guilt, we conclude Defendant has not demonstrated that any alleged error prejudiced him.

### C. Attorney's Fees

Finally, Defendant argues that the trial court erred in ordering Defendant to pay attorney's fees absent notice and opportunity to be heard. We agree.

### i. Petition for Writ of Certiorari

Before we reach the merits of Defendant's appeal of the trial court's imposition of a civil judgment for attorney's fees, we first turn to Defendant's petition for writ of certiorari.

Defendant entered an oral notice of appeal following entry of the criminal judgment on 2 April 2019 but did not file a timely written notice of appeal of the civil judgment for attorney's fees as is required by North Carolina Rule of Appellate Procedure 3(a). When "this Court cannot hear defendant's direct appeal [due to violation of a jurisdictional appellate rule], it does have the discretion to consider the matter by granting a petition for writ of certiorari." *State v. McCoy*, 171 N.C. App. 636, 638, 615 S.E.2d 319, 320 (2005) (citation omitted). A defendant may file a petition for a writ of certiorari to appeal a civil judgment "when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C. R. App. P. 21(a)(1).

In accordance with Rule 21, this Court has discretion to grant the petition and review the judgment. *Id.*

As we have done in similar cases involving appeals from civil judgments ordering indigent defendants to pay attorney's fees, *see, e.g.*, *State v. Mangum*, ___ N.C. App. ___, ___, 840 S.E.2d 862, 868 (2020); *State v. Boykin*, ___ N.C. App. ___, 840 S.E.2d 538, 2020 N.C. App. LEXIS 286, at \*16 (2020) (unpublished), we grant Defendant's petition for writ of certiorari and reach the merits of Defendant's argument.

### ii. Standard of Review

Whether the trial court provided a defendant adequate "notice and an opportunity to be heard regarding the total amount of hours and fees claimed by the court-appointed attorney is a question of law," which this Court reviews de novo. *State v. Patterson*, ___ N.C. App. ___, ___, 839 S.E.2d 68, 73 (2020) (internal marks and citation omitted). "Under a de novo review, th[is C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Williams*, 362 N.C. at 632-33, 669 S.E.2d at 294 (citation and marks omitted).

### iii. Merits

Pursuant to N.C. Gen. Stat. § 7A-455 (2019), a trial court may order an indigent defendant who is convicted to pay for the amount of fees charged by the defendant's court-appointed attorney. However, this Court has held that before

entering a judgment for attorney's fees against an indigent defendant, the trial court must afford the defendant notice and opportunity to be heard regarding the fees charged. *State v. Friend*, 257 N.C. App. 516, 523, 809 S.E.2d 902, 907 (2018). In evaluating whether the trial court provided adequate notice and an opportunity to be heard, this Court assesses whether the trial court asked

> defendants—personally, not through counsel—whether they wish to be heard on the issue. Absent a colloquy directly with the defendant on this issue, the requirements of notice and opportunity to be heard will be satisfied only if there is other evidence in the record demonstrating that the defendant received notice, was aware of the opportunity to be heard on the issue, and chose not to be heard.

*Id.* This standard was established to provide "further guidance on what trial courts should do to ensure that this Court can engage in meaningful appellate review when defendants raise this issue." *Id.* Thus, when there is no evidence in the record that the defendant was personally notified and given the opportunity to be heard "regarding the appointed attorney's total hours or the total amount of fees imposed," then the "imposition of attorney's fees must be vacated, even when the transcript reveals that attorney's fees were discussed following [the] defendant's conviction." *State v. Harris*, 255 N.C. App. 653, 664, 805 S.E.2d 729, 737 (2017) (internal marks and citation omitted).

Here, there is no indication in the record that Defendant was heard or that he understood he had a right to be heard on the issue of attorney's fees. The trial court

did not engage in any colloquy with Defendant regarding attorney's fees. Given that the trial court never directly asked Defendant whether he wished to be heard on the issue and there is no other evidence that Defendant was afforded notice and opportunity to be heard, we must vacate the civil judgment for attorney's fees and remand for further proceedings on this issue.

### III. Conclusion

For the reasons stated above, we hold that Defendant received a trial free from error. However, we vacate the trial court's award of attorney's fees.

NO ERROR IN PART; VACATED IN PART AND REMANDED.

Judge ZACHARY concurs.

Judge BERGER concurs by separate opinion.

No. COA19-1138 – *State v. Young-Kirkpatrick*

BERGER, Judge, concurring in separate opinion.

I concur with the majority opinion.

However, on the issue of attorney's fees, "Defendant knows from the initial appointment of counsel that he is responsible for his court-appointed attorney's fees. But, this Court has created an avenue for these procedural appeals where defendants suffer no prejudice. These appeals cost countless man-hours and tens-of-thousands of dollars, and elevate form over substance." *State v. Mangum*, ___ N.C. App. ___, ___, 840 S.E.2d 862, 871 (2020) (*Berger, J., concurring*).